ALEX G. TSE (CABN 152348)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney
ALISON E. DAW (CABN 137026)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6475
      FAX: (415) 436-7234
      wendy.garbers@usdoj.gov

Attorneys for the Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| S.A.; J.A.; A.B.; R.C., on behalf of himself and as Guardian Ad Litem for J.C., a minor child; M.C.; D.D.; G.E., on behalf of himself and as Guardian Ad Litem for B.E., a minor child; J.F. on behalf of himself and as Guardian Ad Litem for H.F. and A.F., minor children, on behalf of themselves and on behalf of a class of all similarly situated individuals, and CASA,<br><br>      Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. DEPARTMENT OF STATE; KIRSTJEN NIELSEN, in her official capacity as Secretary of Homeland Security; MICHAEL R. POMPEO, in his official capacity as Secretary of State; L. FRANCIS CISSNA, in his official capacity as Director of U.S. Citizenship and Immigration Services; UNITED STATES OF AMERICA,<br><br>      Defendants. | Case No. 18-CV-03539 LB<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  October 11, 2018<br>Time:  9:30 a.m.<br><br>The Honorable Laurel Beeler |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.   General Principles of Parole. ....................................................................2

    B.   The CAM Parole Program. ......................................................................3

LEGAL STANDARDS ........................................................................................................5

    A.  Preliminary Injunction Standard. .............................................................5

    B.  Rule 12(b)(6) Standard. ...........................................................................6

    C.  Review Under the Administrative Procedure Act. ...................................7

ARGUMENT .......................................................................................................................7

    I.       Plaintiffs' Request For A Preliminary Injunction That Alters The Status Quo Should Be Denied. ..............................................................................7

    II.     Plaintiffs' Cannot Satisfy Their Heighten Burden For Obtaining A Mandatory Preliminary Injunction. .........................................................9

    A.  Plaintiffs Cannot Show That They Will Clearly Succeed On The Merits. ....9

       1. Plaintiffs Will Not Clearly Succeed On Their APA Causes Of Action. ...9

       2. Plaintiffs Will Not Clearly Succeed On Their Due Process Claim. .......13

       3. Plaintiffs Will Not Clearly Succeed On Their Equal Protection Claim. ..15

       4. Plaintiffs Will Not Clearly Succeed On Their Equitable Estoppel Cause Of Action. ...........................................................................17

    B.  Plaintiffs' Request For Preliminary Injunctive Relief Is Contrary To The Public Interest. ....................................................................................20

    III.    NEITHER THE ALIEN PAROLE APPLICANTS NOR CASA HAS STANDING. ............................................................................................21

    A.  The Alien Parole Applicants Lack Article III Standing To Proceed. ..........21

    B.  CASA Also Lacks Prudential Standing To Pursue Relief On Its Own Behalf. .................................................................................................22

    IV.    THIS COURT LACKS JURISDICTION TO ENJOIN THE PRESIDENT, AND THE CLAIMS AGAINST THE PRESIDENT MUST BE DISMISSED. ............................................................................................23

V.      THE COURT CANNOT ENTER CLASSWIDE, NATIONWIDE INJUNCTIVE RELIEF. ........................................................24

VI.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED. .........................................24

CONCLUSION ......................................................................................................................25

**CASES**

*AARP v. EEOC*,
226 F. Supp. 3d 7 (D.D.C. 2016) ....................................................................................... 7

*Am. Baptist Churches in the U.S.A. v. Meese*,
666 F. Supp. 1358 (N.D. Cal. 1987) ................................................................................ 23

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ......................................................................................... 7

*Ams. for Safe Access v. DEA*,
706 F.3d 438 (D.C. Cir. 2013) ........................................................................................... 7

*Anderson v. United States,*
612 F.2d 1112 (9th Cir. 1980) ........................................................................................... 6

*AR Ex. 2* [,
Executive Order 13767 ..................................................................................................... 21

*Arizona Mun. Corp.*,
471 F.3d 1100 (9th Cir. 2006) ......................................................................................... 22

*Arpaio v. Obama*,
27 F. Supp. 3d 185 (D.D.C. 2014) ................................................................................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 6

*Ass'n of Proprietary Colleges v. Duncan*,
107 F. Supp. 3d 332 (S.D.N.Y. 2015) ............................................................................. 15

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ............................................................................................. 6

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) .......................................................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ 6

*Benjamin v. United States Dep't of State*,
No. 17-CV-03587-LB, 2018 WL 1142124 (N.D. Cal. Mar. 2, 2018) ............................. 22

*Bolante v. Keisler*,
  506 F.3d 618 (7th Cir. 2007) .................................................................................. 10

*Casa De Maryland v. U.S. Dep't of Homeland Sec.*,
  284 F. Supp. 3d 758 (D. Md. 2018) ................................................................... passim

*Chinese Am. Civic Council v. Attorney Gen.*,
  396 F. Supp. 1250 (D.D.C. 1975) ............................................................................ 22

*Chun v. Powell*,
  223 F. Supp. 2d 204 (D.D.C. 2002) ......................................................................... 22

*Comm'n*,
  432 U.S. 333 (U.S. 1977) ......................................................................................... 23

*Conn. Bd. of Pardons v. Dumschat*,
  452 U.S. 458 (1981) ........................................................................................... 14, 15

*Dave v. Ashcroft*,
  363 F.3d 649 (7th Cir. 2004) ................................................................................... 23

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ..................................................................................... 5

*Dobrowski v. Jay Dee Contractors, Inc.*,
  571 F.3d 551 (6th Cir. 2009) ................................................................................... 18

*Earth Island Inst. v. Carlton*,
  626 F.3d 462 (9th Cir. 2010) ..................................................................................... 5

*Emery Min. Corp. v. Sec'y of Labor*,
  744 F.2d 1411 (10th Cir. 1984) ......................................................................... 18, 19

*Estate of Amaro v. City of Oakland*,
  653 F.3d 808 (9th Cir. 2011) ................................................................................... 18

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ............................................................................................ 7, 12

*Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*,
  769 F.3d 1127 (D.C. Cir. 2014) ............................................................................... 21

*Friends of the Earth Inc., v. Laidlaw Envtl. Servs. Inc.*,
  528 U.S. 167 (2000) ................................................................................................. 22

*Fry v. Melaragno*,
  939 F.2d 832 (9th Cir. 1991) ................................................................................... 24

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ................................................................................. 5, 6

*Garcia-Mir v. Smith*,
  766 F.2d 1478 (11th Cir. 1985) ............................................................................... 14

*Gerhart v. Lake Cty., Mont.*,
  637 F.3d 1013 (9th Cir. 2011) ................................................................................. 14

*Hall v. E.E.O.C.,*
456 F. Supp. 695 (N.D. Cal. 1978) ................................................................................. 13

*Hassan v. Chertoff,*
593 F.3d 785 (9th Cir. 2010) ........................................................................................ 10

*Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor (AFL-CIO) v. I.N.S.,*
306 F.3d 842 (9th Cir. 2002) ........................................................................................ 24

*Iqbal,*
556 U.S. 678 ..................................................................................................................... 6

*Jeanty v. Bulger,*
204 F. Supp. 2d 1366 (S.D. Fla. 2002) ................................................................... 11, 14

*Johnson v. Mazza,*
No. 215CV09183ODWAS, 2016 WL 5842186 (C.D. Cal. Oct. 4, 2016) .................... 18

*Kleindienst,*
408 U.S. 753 (1972) ........................................................................................... 1, 11, 16

*Kucana v. Holder,*
558 U.S. 233 (2010) ....................................................................................................... 10

*Kwai Fun Wong v. United States,*
373 F.3d 952 (9th Cir. 2004) ........................................................................................ 14

*Leng May Ma v. Barber,*
357 U.S. 185 (1958) ..................................................................................................... 2, 3

*Lujan,*
504 U.S. ..................................................................................................................... 22, 23

*M.R. v. Dreyfus,*
697 F.3d 706 (9th Cir. 2012) ........................................................................................ 25

*Maldonado v. Macias,*
150 F. Supp. 3d 788 (W.D. Tex. 2015) ......................................................................... 22

*Mason v. Brooks,*
862 F.2d 190 (9th Cir. 1988) ................................................................................... 10, 11

*Matter of Arrabally & Yerrabelly,*
25 I. & N. Dec. 771 (BIA 2012) ...................................................................................... 3

*McCormack v. Hiedeman,*
694 F.3d 1004 (9th Cir. 2012) ...................................................................................... 25

*McMichael v. Napa Cty.,*
709 F.2d 1268 (9th Cir. 1983) ...................................................................................... 23

*Mendez-Garcia v. Lynch,*
840 F.3d 655 (9th Cir. 2016) ........................................................................................ 23

iv

*Moise v. Bulger,*
321 F.3d 1336 (11th Cir. 2003) ...................................................................................... 14

*Morgan v. Gonzales,*
495 F.3d 1084 (9th Cir. 2007) ........................................................................................ 19

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) .................................................................................................. 7, 8, 9

*Munoz v. Ashcroft,*
339 F.3d 950 (9th Cir. 2003) .......................................................................................... 13

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
551 U.S. 644 (2007) ......................................................................................................... 7

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
434 U.S. 1345 (1977) ...................................................................................................... 21

*Newdow v. Roberts,*
603 F.3d 1002 (D.C. Cir. 2010) ...................................................................................... 24

*Nken v. Holder,*
556 U.S. 418 (2009) ........................................................................................................ 20

*Northwest Immigrant Rights Project v. United States Citizenship & Immigration Services* 2016 WL
5817078 (W.D. Wash. Oct. 5, 2016) .............................................................................. 24

*Organized Vill. of Kake v. U.S. Dep't of Agric.,*
795 F.3d 956 (9th Cir. 2015) .......................................................................................... 12

*Pennzoil Co. v. Dep't of Energy,*
480 F. Supp. 1126 (D. Del. 1979) ................................................................................... 13

*Perez v. Mortg. Bankers Ass'n,*
135 S. Ct. 1199 (2015) .................................................................................................... 13

*Regents of Univ. of California v. U.S. Dep't of Homeland Sec.,*
298 F. Supp. 3d 1304 (N.D. Cal. 2018) .............................................................. 11, 13, 14

*Republican Party of Pennsylvania v. Cortes,*
218 F. Supp. 3d 396 (E.D. Pa. 2016) .......................................................................... 7, 20

*Salgado-Diaz v. Gonzales,*
395 F.3d 1158 (9th Cir. 2005) ........................................................................................ 18

*Salt Pond Assocs. v. U.S. Army Corps of Eng'rs,*
815 F. Supp. 766 (D. Del. 1993) .................................................................................... 8, 9

*Select Milk Producers, Inc. v. Johanns,*
400 F.3d 939 (D.C. Cir. 2005) ......................................................................................... 8

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
739 F.2d 1415 (9th Cir. 1984) ...................................................................................... 2, 6

*Singh v. Carter,*
185 F. Supp. 3d 11 (D.D.C. 2016) .................................................................................... 8

*Smith v. Ashcroft,*
295 F.3d 425 (4th Cir. 2002) ................................................................................................. 23

*Socop-Gonzalez v. INS,*
272 F.3d 1176 (9th Cir. 2001) ............................................................................................... 19

*Sorannos Gasco, Inc. v. Morgan,*
874 F.2d 1310 (9th Cir. 1989) ............................................................................................... 15

*Southdown, Inc. v. Moore McCormack Res., Inc.,*
686 F. Supp. 595 (S.D. Tex. 1988) ........................................................................................ 21

*Stanley v. Univ. of S. California,*
13 F.3d 1313 (9th Cir. 1994) ............................................................................................... 6, 8

*Stevens v. Hayes,*
2012 WL 2572790 (W.D. Tex. July 2, 2012), 535 F. App'x 358 (5th Cir. 2013), .................... 24

*Sulit v. Schiltgen,*
213 F.3d 449 (9th Cir. 2000) ................................................................................................. 19

*Sun Il Yoo v. Immigration & Naturalization Serv.,*
534 F.2d 1325 (9th Cir. 1976) ............................................................................................... 18

*Sw. Bell Tel. Co. v. FCC,*
168 F.3d 1344 (D.C. Cir. 1999) ............................................................................................... 7

*Taiebat v. Scialabba,*
No. 17-CV-0805-PJH, 2017 WL 747460 (N.D. Cal. Feb. 27, 2017) ....................................... 8

*Trump v. Hawaii,*
138 S. Ct. 2392 (2018) ............................................................................................. 1, 2, 16, 17

*U.S. Philips Corp. v. KBC Bank N.V.,*
590 F.3d 1091 (9th Cir. 2010) ................................................................................................. 6

*United States ex rel. Accardi v. Shaughnessy,*
347 U.S. 260 (1954) ................................................................................................................ 12

*United States v. Valenzuela–Bernal,*
458 U.S. 858 (1982) ................................................................................................................ 21

*Univ. of Texas v. Camenisch,*
451 U.S. 390 (1981) .................................................................................................................. 8

*Villena v. Immigration & Naturalization Serv.,*
622 F.2d 1352 (9th Cir. 1980) ............................................................................................... 18

*Walker v. Reno,*
925 F. Supp. 124 (N.D.N.Y. 1995) .................................................................................... 12, 13

*Watkins v. U.S. Army,*
875 F.2d 699 (9th Cir. 1989) ................................................................................................. 19

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982)....................................................................................................... 20, 21

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)............................................................................................................. 5

*Zepeda v. I.N.S.,*
  753 F.2d 719 (9th Cir. 1983) ......................................................................................... 25

## STATUTES

5 U.S.C. § 705 ..................................................................................................................... 8, 9

5 U.S.C. § 706(2)(A) ............................................................................................................. 7

8 U.S.C. § 1182(d)(5) ........................................................................................................ 3, 21

8 U.S.C. § 1182(d)(5)(A) .......................................................................................... 2, 3, 9, 10

## RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 6

## REGULATIONS

8 C.F.R. § 212.5 ................................................................................................................... 3

8 C.F.R. § 212.5(e)............................................................................................................ 3, 5

**INTRODUCTION**

The Supreme Court's recent decision in in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), compels the conclusion that plaintiffs are unlikely to succeed on the merits of their action challenging the termination of the Central American Minors ("CAM") Parole Program.  In *Hawaii*, the Supreme Court emphasized that judgments about immigration policy are to be made by Congress and the Executive, not the Judiciary.  "For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  138 S. Ct. at 2418.  The Court's review of the Executive's admission decisions concerning foreign nationals is limited "to whether the Executive gave a facially legitimate and bona fide reason for its action."  *Id.* at 2419.  "It is not the judicial role in cases of this sort to probe and test the justifications of immigration policies."  *Id.*

The *Hawaii* plaintiffs sought to cast doubt on the immigration policy at issue—the Presidential Proclamation—by relying on "a series of statements by the President and his advisers."  *Id.* at 2417.  The Court, however, reaffirmed the applicability of *Kleindienst v. Mandel*'s "narrow standard of review" in "admission and immigration cases."  *Id.* at 2419; *see Kleindienst*, 408 U.S. 753 (1972).  At most, the court should conduct rational basis review, considering "whether the entry policy is plausibly related to the Government's stated objective."  *Id.* at 2420.  "As a result, [a court] may consider plaintiffs' extrinsic evidence, but [must] uphold the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds."  *Id.*

In light of the standard of review, "it should come as no surprise that the Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny."  *Id.*  The *Hawaii* Court found that the Presidential Proclamation at issue easily satisfied rational basis review.  "[B]ecause there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility, we must accept that independent justification."  *Id.* at 2421.  The Court declined to "substitute [its] own assessment for the Executive's predictive judgments on such matters, all of which are delicate, complex, and involve large elements of prophecy."  *Id.*  The Court thus held that plaintiffs had "not demonstrated a likelihood of success on the merits of their constitutional claim," and reversed the grant of a preliminary injunction.  *Id.* at 2423.

Termination of the CAM Parole Program passes *Hawaii's* rational basis scrutiny.  The Secretary of Homeland Security's rescission of the CAM Parole Program was based on the facially legitimate view that only Congress—not the Executive—should create immigration programs applicable to pre-designated categories of aliens.  (AR Exs. 2, 5, 6, 9.[1])  The plain language of section 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5)(A), which establishes the Secretary's discretionary authority to grant temporary parole "only on a case-by-case basis," "strongly counsel[s] in favor of using the parole authority sparingly and only in individual cases[.]"  (AR Ex. 5.)  This facially neutral reason for rescission of the CAM Parole Program will plainly survive *Hawaii*'s rational basis scrutiny.  Accordingly, plaintiffs' request for a preliminary injunction must be denied.

The request for a preliminary injunction must also be denied because it seeks to alter, not maintain, the status quo.  The CAM Parole Program was terminated on August 16, 2017—nearly ten months before plaintiffs filed suit and eleventh months before they moved for a preliminary injunction.  The Ninth Circuit has made it clear that a preliminary injunction may not be used to obtain "a preliminary adjudication on the merits," but only to preserve the status quo pending final judgment.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  Through their preliminary injunction motion, plaintiffs seek to undermine the status quo, and resurrect a program that has long been terminated.  This fact counsels strongly against entry of a preliminary injunction.

## BACKGROUND

### A.        General Principles of Parole.

"Parole" exists separate and apart from the CAM Parole Program.  Parole allows a foreign national to be physically present in the United States for a specific, temporary period.  *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) (observing that parole "was never intended to affect an alien's status" or result in a determination that "parole placed [the alien] legally within the United States").  Parole of a foreign national into the United States is not an "admission" of that person into the country in a valid immigrant or nonimmigrant status.  *See* 8 U.S.C. § 1182(d)(5)(A).  Under the

---

[1] The agency's Administrate Record is submitted herewith, and cited as "AR."  The Administrative Record is comprised of 62 documents, which are appended as exhibits ("Ex.") to the Index of the Administrative Record.

Immigration and Nationality Act ("INA"), the decision to parole an alien into the United States temporarily is a wholly discretionary determination made by the Secretary of Homeland Security, who is to exercise such authority "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  *Id.*[2]

Department of Homeland Security ("DHS") regulations generally describe DHS's discretionary parole authority.  *See* 8 C.F.R. § 212.5.  DHS may terminate parole at any time in the agency's discretion, consistent with existing regulations, and in those cases, the individual is "restored to the status that he or she had at the time of parole."  8 C.F.R. § 212.5(e); *see also* 8 U.S.C. § 1182(d)(5)(A).

A decision by DHS to exercise its discretion favorably that is made while the parole applicant is still in his or her home country is a conditional authorization only.  Conditional parole authorization permits the applicant to travel to the United States.  If an applicant is granted conditional parole authorization, either U.S. Citizenship and Immigration Services ("USCIS"), a DHS component, or the Department of State, at DHS's direction, will issue travel documents to enable the applicant to travel to a U.S. port-of-entry and request parole from U.S. Customs and Border Protection (CBP).  (AR Ex. 1.)  The ultimate determination whether to parole an individual into the United States is made by CBP officers upon the individual's arrival at a U.S. port of entry.  (*Id.*)  If parole is ultimately granted, the parolee may stay in the United States unless and until the parole period expires or is terminated.  *See* 8 C.F.R. § 212.5(e).

**B.     The CAM Parole Program.**

The CAM Parole Program was established by the DHS in 2014, along with the CAM Refugee Program, to provide certain qualified minors in El Salvador, Guatemala and Honduras with a path to reunite with parents already lawfully present in the United States.  (AR Ex. 1.)  The CAM programs began accepting applications from qualifying parents in the United States for their children on December 1, 2014.  (AR Ex. 11.)  The CAM Refugee and Parole Programs provided eligible children the opportunity to be considered, while still in their home country, for refugee resettlement in the United

---

[2] Although 8 U.S.C. § 1182(d)(5) continues to refer to the Attorney General, this parole authority now resides exclusively with the Secretary of Homeland Security.  *See Matter of Arrabally & Yerrabelly*, 25 I. & N. Dec. 771, 777 n.5 (BIA 2012).

1    States.  Qualifying children who were denied refugee status were automatically considered for parole

2    into the United States.  (AR Ex. 1.)

3          A qualifying child's accompanying parent, sibling, or child could also be considered for parole

4    into the United States under the program.  (AR Ex. 1.)  If USCIS found a child or qualifying family

5    member to be ineligible for refugee status, the decision notice informed the applicant of whether he or

6    she had been instead conditionally approved for parole into the United States under the CAM Parole

7    program.  (AR Exs. 1, 44.)  "Significant public benefit" for parole was considered established if the

8    qualifying child or family member was found to meet the criteria for the program.  (AR Exs. 41 at

9    AR000442, 44.)  The applicant also had to merit a favorable exercise of discretion to be conditionally

10   approved for parole, which qualifying children typically did absent some adverse information in their

11   background.  The CAM Parole Program was established, without notice and comment procedures, based

12   on the Secretary's discretionary parole authority and broad authority to administer the immigration laws.

13   (AR Ex. 1.)

14         On August 16, 2017, then Acting Secretary Elaine Duke announced the termination of the

15   discretionary CAM Parole Program.  (*Id*).  Her decision to rescind the CAM Parole Program was made

16   in accordance with Executive Order 13767, which called for DHS to take appropriate action to ensure

17   that parole authority under § 212(d)(5) of the INA was exercised only individually, on a case-by-case

18   basis, in accordance with the plain language of the statute, "and in all circumstances only when an

19   individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such

20   parole."  (AR Exs. 2, 5, 6, 9.)  The decision was motivated by the administration's legitimate view that

21   only Congress should establish programs "granting parole to certain aliens in pre-designated categories."

22   (AR Ex. 5.)  The statutory language of the INA "counsel[s] in favor of using the parole authority

23   sparingly and only in individual cases[.]"  (*Id*.)  Thus, "[c]onsistent with the Executive order, the Acting

24   Secretary of Homeland Security [] reviewed the CAM Parole Program and decided to rescind the

25   program, which automatically considered for parole all individuals found ineligible for refugee status

26   under the in-country refugee program in Guatemala, Honduras, or El Salvador."  (AR Ex. 6.)

27         Individuals who had been conditionally approved for parole, but had not yet travelled, were

28   notified that the CAM Parole Program had been terminated, and that their conditional parole had been

4

rescinded.  (AR Exs. 1, 6.)  However, individuals who had already been paroled into the United States (i.e., had already traveled to the United States) under the CAM Parole Program are able maintain their parole until the expiration of its period, unless there are other grounds for termination under DHS regulations, set forth at 8 C.F.R. § 212.5(e).  (AR Exs. 1, 6.)  CAM Program parolees already in the United States may also apply for re-parole on Form I-131 or for any immigration status for which they may be otherwise eligible.  (*Id.*)  Moreover, although the CAM Parole Program was rescinded, minors in Guatemala, Honduras, and El Salvador are still able to apply for parole consideration independent of the CAM Parole Program by filing USCIS Form I-131, Application for Travel Document.  (*Id.*)  Additionally, individuals who were conditionally approved for parole before the CAM Parole Program was rescinded were given an additional 90 days to submit a request for review of the denial of their refugee cases.  (*Id.*)

## LEGAL STANDARDS

### A.    Preliminary Injunction Standard.

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Preliminary injunctions are "never awarded as of right."  *Id.* at 24.

"A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20).  Alternatively, a plaintiff can show that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards' [plaintiff], as long as the second and third *Winter* factors are [also] satisfied."  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy."  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).  Plaintiffs' burden is aptly described as a "heavy" one.  *Id.*

The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause."  *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).  A preliminary injunction may not be used to obtain "a preliminary adjudication on the

1  merits," but only to preserve the status quo pending final judgment.  *Sierra On-Line, Inc. v. Phoenix*

2  *Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

3       Accordingly, where a plaintiff seeks mandatory injunctive relief—seeking to alter the status

4  quo—"courts should be extremely cautious."  *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th

5  Cir. 1994).  A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite*

6  and is particularly disfavored."  *Id.* at 1320 (internal quotations and alteration omitted).  A mandatory

7  injunction "should not be issued unless the facts and law clearly favor the moving party."  *Anderson v.*

8  *United States*, 612 F.2d 1112, 1114 (9th Cir. 1980).  Mandatory injunctions "are not granted unless

9  extreme or very serious damage will result and are not issued in doubtful cases[.]"  *Id.* at 1115.  A party

10  seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not

11  simply that she is likely to succeed."  *Garcia,* 786 F.3d at 740 (9th Cir. 2015) (emphasis in original).

12      **B.**    **Rule 12(b)(6) Standard.**

13       Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack

14  of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

15  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The Supreme Court's decisions

16  in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

17  make it clear that conclusory allegations are no longer sufficient to withstand a challenge under Rule

18  12(b)(6).  To survive a motion to dismiss, a complaint must plead facts sufficient to "state a claim to

19  relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A claim has "facial plausibility" only if

20  the complaint pleads facts sufficient to allow "the court to draw the reasonable inference that the

21  defendant is liable for misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the Court must treat all

22  factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a

23  legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. 678.

24

25

26

27

28

1      C.      Review Under the Administrative Procedure Act.

2          Whether an agency complied with the governing Administrative Procedure Act ("APA")

3   standard is a question of law.  *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir.

4   2001).  The APA "sets forth the full extent of judicial authority to review executive agency action for

5   procedural correctness."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).  It requires

6   courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary,

7   capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  This

8   is a "deferential" standard, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658

9   (2007), which "presume[s] the validity of agency action," *Sw. Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1352

10  (D.C. Cir. 1999), and bars a court from substituting its judgment for that of the agency, *see Motor

11  Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The Court "will not

12  disturb the decision of an agency that has examine[d] the relevant data and articulate[d] a satisfactory

13  explanation for its action including a rational connection between the facts found and the choice made."

14  *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (quotations and citation omitted).

15                                     **ARGUMENT**

16  **I.      PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION THAT ALTERS THE
            STATUS QUO SHOULD BE DENIED.**

17

18          The CAM Parole Program was officially terminated on August 16, 2017.  (AR Ex. 1.)  Plaintiffs

19  did not file this lawsuit until June 13, 2018 (ECF 1) and did not file their motion for a preliminary

20  injunction until July 11, 2018 (ECF 24), nearly eleven months after the program's termination.

21  Plaintiffs' delay in "filing their Complaint and [Preliminary Injunction] Motion, [is] something which

22  weighs decidedly against granting the extraordinary relief they seek."  *Republican Party of Pennsylvania

23  v. Cortes*, 218 F. Supp. 3d 396, 404 (E.D. Pa. 2016); *accord AARP v. EEOC*, 226 F. Supp. 3d 7, 22

24  (D.D.C. 2016), and cases cited therein.

25          Plaintiffs' motion does not seek to preserve the status quo, as plaintiffs posit.  (ECF 24 at 9.)

26  Instead, plaintiffs seek to alter the status quo, asking the Court to turn back the clock to August 2017 and

27  "set[] aside the termination of the CAM Parole program . . . and reinstat[e] the program for applicants in

28  the pipeline at the time it was officially terminated."  (*Id.* at 31.)  This is precisely the same affirmative,

7

injunctive relief that plaintiffs seek in their complaint.  (*Compare* ECF 1 at Prayer for Relief *with* ECF 24 at 31.)  *See Taiebat v. Scialabba*, No. 17-CV-0805-PJH, 2017 WL 747460, at *3 (N.D. Cal. Feb. 27, 2017) ("The relief petitioner is seeking in this [preliminary injunction] motion is not 'temporary' or 'preliminary,' but rather is the exact same ultimate relief he seeks in his petition.")."  "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Id*.

The mandatory injunction plaintiffs seek alters, rather than preserves, the status quo pending a final judgment in this case.  *See Singh v. Carter*, 185 F. Supp. 3d 11, 16–17 (D.D.C. 2016) (indicating that a mandatory injunction alters, rather than preserves the status quo by "commanding some positive act.").  "When a mandatory preliminary injunction is requested, [as here] the district court should deny such relief unless the facts and law clearly favor the moving party."  *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994).  Plaintiffs cannot meet this heightened burden.  *See id.* (affirming denial of request for mandatory preliminary injunction).

A mandatory injunction would be especially inappropriate here, as the APA "does not confer jurisdiction onto the Court to alter the status quo nor does it allow the Court in issuing interim relief to actually dictate specific terms or conditions to a governmental agency."  *Salt Pond Assocs. v. U.S. Army Corps of Eng'rs*, 815 F. Supp. 766, 776 (D. Del. 1993).  The APA authorizes courts to provide preliminary injunctive relief only to "postpone the effective date of an agency action" or to "preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  The CAM Parole Program has already been terminated.  It was terminated many months ago.  *See Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 955 (D.C. Cir. 2005) (citations omitted) ("Judicial precedent confirms that the status quo is the last uncontested status which preceded the pending controversy.").  As plaintiffs are asking the Court to "issue a preliminary injunction setting aside the termination of the CAM Parole program" (ECF 24 at 31), plaintiffs are undeniably seeking a mandatory injunction that alters the status quo.  This is impermissible under the APA.  *See Salt Pond Assocs.*, 815 F. Supp. at 775-76; 5 U.S.C. § 705.  The Court cannot provide plaintiffs with the affirmative injunctive relief they seek

1  because the APA does not permit entry of a mandatory injunction against DHS.

2  **II.   PLAINTIFFS CANNOT SATISFY THEIR HEIGHTENED BURDEN FOR OBTAINING
       A MANDATORY PRELIMINARY INJUNCTION.**

3

4        In addition to being impermissible under the APA, a preliminary injunction is otherwise

5  unwarranted.  Plaintiffs cannot show that they are clearly likely to succeed on the merits of their claims.

6  The Secretary lawfully exercised her discretion to terminate the CAM Parole Program based on the

7  facially legitimate view that parole authority should only be exercised individually, on a case-by-case

8  basis, and not through the creation of immigration programs applicable to pre-designated categories of

9  aliens.  It would be inappropriate for the court to interfere with the executive branch's authority to

10  enforce immigration laws consistent with a Presidential Executive Order.

11        **A.   Plaintiffs Cannot Show That They Will Clearly Succeed On The Merits.**

12             **1.   Plaintiffs Will Not Clearly Succeed On Their APA Causes Of Action.**

13        Plaintiffs are unlikely to succeed on their APA claim.  It is well established that "[t]he scope of

14  review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its

15  judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*

16  *Co.*, 463 U.S. 29, 43 (1983).  "[I]t is irrelevant whether this Court, a judge in California or New York, or

17  even a justice on the Supreme Court might have made a different decision while standing in the shoes of

18  DHS."  *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 772 (D. Md. 2018),

19  appeal pending, No. 18-1522 (4th Cir. filed May 8, 2018).  The relevant inquiry is whether the decision

20  was made with "a satisfactory explanation for its action including a rational connection between the

21  facts found and the choice made."  *State Farm,* 463 U.S. at 43.

22        Here, the Administrative Record reflects that DHS terminated the CAM Parole Program based

23  on the facially legitimate view that only Congress should create immigration programs applicable to pre-

24  designated categories of aliens.  (AR Exs. 2, 5, 6, 9.)  The plain language of section 212(d)(5)(A) of the

25  INA, 8 U.S.C. § 1182(d)(5)(A), which establishes the Secretary's discretionary authority to grant

26  temporary parole "only on a case-by-case basis," "strongly counsel[s] in favor of using the parole

27  authority sparingly and only in individual cases[.]"  (AR Ex. 5.)  In tension with the INA's instruction to

28  grant parole "only on a case-by-case basis," individuals considered for  parole under the CAM Parole

1    Program were found categorically to meet the "significant public benefit" requirement for parole by

2    meeting pre-established criteria, which was "all qualifying children found ineligible for refugee status

3    under the in-country refugee program in Guatemala, Honduras, or El Salvador," who demonstrated a

4    well-founded fear of harm.  (AR Ex. 41 at AR000440, AR000442, Ex. 9 at AR000038.)  Tellingly, data

5    from November 2016 indicates that 99 percent of applicants were conditionally approved for either

6    refugee resettlement or parole under the CAM Program, prior to the program's termination.  (AR Ex. 17

7    at AR000103.)

8         There is a rational connection between the Secretary's conclusion that the INA counsels in favor

9    of using parole authority sparingly and only in individual cases and the decision to cancel the CAM

10   Parole Program.  Plaintiffs emphasize the fact that "the humanitarian crisis that led to the creation of the

11   CAM program has not abated."  (ECF 24 at 15.)  But this fact is not inconsistent with the Secretary's

12   decision, and was, in fact, expressly considered by the agency.  (*See, e.g.,* AR Ex. 9 at AR000049

13   ("Q16.  Does the United States believe that these children are no longer in danger?  A16.  The review

14   and subsequent termination of the CAM Parole Program is unrelated to the risk of harm that USCIS

15   evaluates within each CAM Parole case.") and Ex. 33 at AR000182 (acknowledging that "DHS is

16   pursuing a new strategy to secure the U.S. southern border").)

17        Deference to the Secretary's decision to terminate the CAM Parole Program is especially

18   appropriate here, as the Secretary has broad discretion regarding parole.  Congress has precluded judicial

19   review of individual parole determinations.[3]  *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Bolante v. Keisler*, 506

20   F.3d 618, 621 (7th Cir. 2007).  As the Ninth Circuit explained in *Mason v. Brooks*, 862 F.2d 190, 193-94

21   (9th Cir. 1988), the Secretary's "decision to deny parole is not reviewed under the 'traditional abuse of

22   discretion standard.'"  "Instead, a rejection of parole will be upheld if the agency advanced a facially

23   legitimate and bona fide reason for the denial."  *Id.* at 193–94.  *See also Jeanty v. Bulger*, 204 F. Supp.

24

---

25   [3] Parole decisions are specifically committed to agency discretion.  *See* 8 U.S.C. § 1182(d)(5)(A).
     Plaintiffs fail to demonstrate how this Court has jurisdiction to review the termination of the CAM

26   Parole Program, given that it is a discretionary "decision or action" covered by the review preclusion
     provision at 8 U.S.C. § 1252(a)(2)(B)(ii).  *See Kucana v. Holder*, 558 U.S. 233, 248 (2010) (8 U.S.C.

27   § 1252(a)(2)(B)(ii) shields decisions or actions specified by statute to be in the discretion of the
     Secretary from court oversight); *see also Hassan v. Chertoff*, 593 F.3d 785, 788 (9th Cir. 2010).  This

28   jurisdictional issue further counsels against entry of a preliminary injunction.

2d 1366, 1380 (S.D. Fla. 2002), *aff'd sub. nom.*, *Moise v. Bulger*, 321 F.3d 1336 (11th Cir. 2003) (noting "extremely deferential" standard of review, limited to whether the agency has articulated "a facially legitimate and bona fide reason" for its decision). The Supreme Court has instructed that "when the Executive exercises this power [to exclude aliens] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against other [constitutional interests]." *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). The Secretary's reasons for terminating the CAM Parole Program were facially legitimate and bona fide.

The fact that the Secretary made the decision to terminate the CAM Parole Program without notice and comment procedures does not undermine the validity of the decision. The CAM Parole Program was instituted by the Obama administration without notice and comment procedures. (*See* AR.) As Judge Alsup held in the context of a challenge to the termination of the DACA policy, "it remains the case that because the original promulgation of the discretionary program did not require notice and comment, a return to the status quo ante also does not require notice and comment." *Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*, 298 F. Supp. 3d 1304, 1310 (N.D. Cal. 2018).

Nor was there a "secret shutdown" of the CAM Parole Program as plaintiffs allege. (ECF 24 at 19-21.) On February 20, 2017, following the issuance of Executive Order 13767, then Secretary Kelly issued an implementing memorandum, instructing DHS to undertake a review of its various parole policies. (AR Ex. 5 at AR000030.) DHS thereafter conducted a careful review of the Central American Minors (CAM) Parole program, and Acting Secretary of Homeland Security Elaine Duke decided to terminate the program. (AR Ex. 9 at AR000046.) "While the CAM program was under review, USCIS ceased considering or offering parole or further processing individuals who had been conditionally approved for parole under the program." (*Id.*) This is not a secret shutdown—there is nothing nefarious about a new administration taking the time to evaluate a program that had been put in place through executive action by the prior administration and pausing processing cases while conducting that evaluation.

Agency action is not subject to a heightened standard of review simply because it represents a change in administrative policy. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009).

11

1  "Elections have policy consequences." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956,

2  968 (9th Cir. 2015).  "[R]eevaluation [of policy choices after an election] is well within an agency's

3  discretion."  *Id.*  "There is nothing improper about the political branches of the government carrying out

4  such changes in policy.  To the contrary, such policy changes are often how successful presidential

5  candidates implement the very campaign promises that helped secure their election.  That is simply the

6  way the modern political process works."  *Id.* at 980 (Smith, J., dissenting).

7         Parole under the CAM Parole Program was never guaranteed.  Even those applicants who had

8  been conditionally approved for parole, were informed that the DHS Secretary retained discretion to

9  terminate parole.  (AR Ex. 48 at AR 000465.)  S*ee also* AR Ex. 17 at AR000105 ("Q.  Is there any

10  guarantee this arrangement will be permitted to proceed under the Trump Administration?  • President

11  Obama is in office until January 20, 2017.  • We are not in a position to speculate on the plans of

12  President-elect Trump.").

13         The agency did consider and account for reliance interests.  The Secretary chose not to terminate

14  the parole of those who had already been paroled into the county under the CAM Parole Program.  (AR

15  Ex. 1 at AR000002 ("Although DHS is terminating the CAM Parole Program, individuals who have

16  been paroled into the United States will maintain parole until the expiration of that period of parole

17  unless there are other grounds for termination of parole under DHS regulations[.]).)  Moreover, although

18  plaintiffs reference fees for "medical examinations and plane tickets" for "examinations and flights

19  [that] were never actually scheduled" (ECF 24 at 27), the termination decision called for such fees to be

20  refunded.  (*See e.g.,* AR Ex. 6 at AR 000037.)

21         Plaintiffs' arguments based on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260

22  (1954), cannot save their APA claims.  (ECF 24 at 21.)  As an initial matter, the CAM Parole Program

23  was not a formally promulgated regulation, of the type at issue in *Accardi*.  *See Walker v. Reno*, 925 F.

24  Supp. 124, 131 (N.D.N.Y. 1995); *see also Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015)

25  ("Because an agency is not required to use notice-and-comment procedures to issue an initial

26  interpretive rule, it is also not required to use those procedures when it amends or repeals that

27  interpretive rule.").  Regardless, "the Accardi doctrine does not bar an agency from amending its

28  regulations," let alone its informal guidance.  *Pennzoil Co. v. Dep't of Energy*, 480 F. Supp. 1126, 1131

1   (D. Del. 1979).  "[T]he Accardi doctrine does not prohibit all changes in agency practice and procedure,

2   but only such as are arbitrary and unexplained." *Id.* at 132.  As set forth above, the reasons for the

3   termination of the CAM Parole Program are clearly set forth in the Administrative Record.  Moreover,

4   as discussed below, plaintiffs have no cognizable due process interest in continuation of the CAM Parole

5   program.  This fact alone takes termination of the CAM Parole program outside the *Accardi* doctrine.

6   *See Hall v. E.E.O.C.*, 456 F. Supp. 695, 703 (N.D. Cal. 1978) ("But the message of [*Accardi*] remains

7   clear that an agency's violation of its regulations is not a violation of due process if no interests within

8   the protection of the due process clause are involved.").

9       In short, the agency satisfactorily explained its reasons for termination the CAM Parole Program,

10   and there is a rational relationship between those reasons and the decision to terminate the program.  As

11   such, plaintiffs have not shown that they will clearly succeed on their APA claims.

12               **2.    Plaintiffs Will Not Clearly Succeed On Their Due Process Claim.**

13       Plaintiffs are unlikely to succeed on their due process claims (both substantive and procedural)

14   either.  "To assert a due process claim, a plaintiff must first show that he or she has an interest in liberty

15   or property protected by the Constitution." *Regents of Univ. of California*, 298 F. Supp. 3d at 1310.

16   Plaintiffs do not have a protected interest in the continuation of the CAM Parole Program here.

17       "In the immigration context, courts have long recognized the power to expel or exclude aliens as

18   a fundamental sovereign attribute exercised by the Government's political departments largely immune

19   from judicial control." *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003).  Because discretionary

20   immigration relief "is a privilege created by Congress, denial of such relief cannot violate a substantive

21   interest protected by the Due Process clause." *Id.*  "Our court of appeals has accordingly held there is no

22   protected interest in temporary parole, since such relief is entirely within the discretion of the

23   [Secretary]." *Regents of Univ. of California*, 298 F. Supp. 3d at 1310 (granting motion to dismiss due

24   process claims in DACA context) (citing *Kwai Fun Wong v. United States*, 373 F.3d 952, 967-68 (9th

25   Cir. 2004)); *see also Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985) (holding that

26   inadmissible aliens lack a cognizable due process interest in parole under § 1182(d)(5)); *Jeanty v.*

27   *Bulger*, 204 F. Supp. 2d 1366, 1375 (S.D. Fla. 2002) (same), *aff'd*, 321 F.3d 1336 (11th Cir. 2003).

28   These authorities foreclose any argument that plaintiffs have a protected interest in continuation of the

                                                                                                    13

1    CAM Parole Program here.  *See Regents of Univ. of California*, 298 F. Supp. 3d at 1310.  Accordingly,

2    plaintiffs cannot show that the termination of the CAM Parole Program violated substantive due process.

3         The fact that the termination of the CAM Parole Program was the result of a change in

4    administration does not undermine this conclusion.  "There is nothing surprising or unfair about policies,

5    laws, or enforcement thereof changing with an election cycle.  Furthermore, the election process, and

6    not federal litigation, is the appropriate method for resolving any fairness implicated in" the termination

7    of the CAM Parole program.  *Casa De Maryland*, 284 F. Supp. 3d at 777 (holding, in DACA context,

8    that plaintiffs' substantive due process claim lacked merit).

9         Plaintiffs' attempt to buttress their constitutional claims by highlighting their reliance interest

10   fares no better.  Plaintiffs do not have a constitutionally-protected reliance interest in the continuation of

11   the CAM Parole program.  "[A] person's belief of entitlement to a government benefit, no matter how

12   sincerely or reasonably held, does not create a protected right if that belief is not mutually held by the

13   government."  *Regents of Univ. of California*, 298 F. Supp. 3d at 1311 (citing *Gerhart v. Lake Cty.,*

14   *Mont.*, 637 F.3d 1013, 1020 (9th Cir. 2011)).  Moreover, an "agency's past practice of generally

15   granting a government benefit is also insufficient to establish a legal entitlement."  *Id*; *accord Gerhart*,

16   637 F.3d at 1020 ("The Supreme Court has explained, '[a] constitutional entitlement cannot be

17   created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has

18   been granted generously in the past.'" (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465

19   (1981))).  Plaintiffs' argument that they have "[r]eli[ed] on the government's representations, . . .

20   spen[ding] thousands of dollars to pre-pay for required DNA tests, medical examination, and plane

21   tickets, as well as hundreds or thousands of dollars to pay for their children's successive required trips to

22   the capital cities where all CAMP appointments took place" (ECF 24 at 12) are similar to the reliance

23   interests advanced by plaintiffs in *Regents of the University of California*, challenging the rescission of

24   the Deferred Action for Childhood Arrivals (DACA) program.  Judge Alsup nevertheless rejected the

25   notion that such reliance could give rise to a constitutional claim.  The court "empathize[d] with those

26   DACA recipients who have built their lives around the expectation that DACA, and its associated

27   benefits, would continue to be available to them if they played by the rules.  That expectation, however,

28   remains insufficient to give rise to a constitutional claim under the Fifth Amendment."  *Id.*

14

1   Plaintiffs' procedural due process arguments are similarly unavailing. "[B]ecause the

2   requirements of procedural due process apply *only* to the deprivation of interests encompassed by the

3   Constitution's protection of liberty and property and because the range of interests protected by

4   procedural due process is not infinite, the first inquiry in every due process challenge is whether the

5   plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Ass'n of Proprietary*

6   *Colleges v. Duncan*, 107 F. Supp. 3d 332, 347 (S.D.N.Y. 2015) (emphasis in original). "Only upon a

7   finding that the plaintiff has been deprived of such an interest do courts look to see if the government's

8   procedures comport with due process." *Id.*; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S.

9   564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests"

10  protected by the Constitution); *Sorannos Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989)

11  ("The procedural due process guarantees . . . apply only when a constitutionally protected liberty or

12  property interest is at stake.").

13  Thus, for the same reason that plaintiffs lack a constitutionally-protected interest in continuation

14  of the CAM Parole Program sufficient to support a substantive due process claim, their procedural due

15  process claims fail. *See Casa De Maryland*, 284 F. Supp. 3d at 776 (holding that DACA's termination

16  did not violate procedural due process because DACA did not create an entitlement). The procedural

17  due process argument fails for the additional reason that procedural due process does not attach to

18  programmatic policy changes. "[P]rocedural due process only applies to individualized deprivations,

19  not policy-based deprivations for an entire class." *Id.*

20  As such, plaintiffs cannot show that they are clearly likely to succeed on their due process

21  claims.

22              **3.      Plaintiffs Will Not Clearly Succeed On Their Equal Protection Claim.**

23  The Supreme Court's recent decision in *Trump v. Hawaii* forecloses plaintiffs' equal protection

24  claims. The agency's reasons for terminating the CAM Parole Program are set forth in the

25  Administrative Record. Those reasons—the belief that parole authority should only be exercised

26  sparingly, on an individual, case-by-case basis, and that use of parole authority to create immigration

27  programs not established by Congress is inappropriate—are "facially legitimate and bona fide." *Hawaii,*

28  138 S. Ct. at 2419. The Supreme Court has instructed that courts must "neither look behind the

[Executive's] exercise of [its] discretion [over the admission and exclusion of foreign nationals], nor test it by balancing its justification against the asserted constitutional interests[.]" *Id.* (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)).  The Executive's policy decision must be upheld "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Id.* at 2420.  "Given the standard of review, it should come as no surprise that the Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny." *Id.*

"The Administrative Record—the basis from which the Court must make its judicial review—does not support the notion that [the agency] was targeting a subset of the immigrant population, and it does not support any supposition that the decision was derived on a racial animus." *Casa De Maryland,* 284 F. Supp. 3d at 774.  The rescission of the CAM Parole Program did not single out nationals of El Salvador, Guatemala and Honduras for less favorable parole consideration than nationals of other countries.  Instead, it put them on the same footing as nationals of other countries.  Now, all aliens may apply for parole by filing USCIS Form I-131, Application for Travel Document.  (AR Ex. 1, 6.)  What plaintiffs are really complaining about is not the failure to receive equal treatment, but the fact that they are no longer receiving preferential treatment.

The Administrative Record here makes it clear that the CAM Parole Program was terminated based on the administration's facially legitimate view that only Congress should establish programs "granting parole to certain aliens in pre-designated categories." (AR Ex. 5.)  The statutory language of the INA "counsel[s] in favor of using the parole authority sparingly and only in individual cases[.]" (*Id*.)  Thus, "[c]onsistent with the Executive order, the Acting Secretary of Homeland Security [] reviewed the CAM Parole Program and decided to rescind the program, which automatically considered for parole all individuals found ineligible for refugee status under the in-country refugee program in Guatemala, Honduras, or El Salvador." (AR Ex. 6.)  The rescission of the CAM Parole program "merely fulfills the duty of the executive branch to faithfully enforce the laws passed by Congress. Accordingly, no affirmative showing of bad faith can follow." *Casa De Maryland*, 284 F. Supp. 3d at 775 (considering termination of DACA program).  Review of the agency's reasons, as set forth in the Administrative Record "is where the judicial inquiry should end." *Casa De Maryland,* 284 F. Supp. 3d at 774.  *See also id.* ("reject[ing] Plaintiffs' reliance on the President's misguided, inconsistent, and

1    occasionally irrational comments made to the media to establish an ulterior motive"); *Hawaii*, 138 S. Ct.

2    at 2417-2420 (refusing to invalidate Presidential Proclamation No. 9645 based on "a series of statements

3    by the President and his advisers casting doubt on the official objective of the Proclamation" in light of

4    the government's proffered justification, which was "independent of unconstitutional grounds.").

5           The Supreme Court's decision in *Hawaii*, which also concerns the authority of the Executive to

6    make decisions about the admission and exclusion of foreign nationals, is directly on-point and

7    controlling.  Plaintiffs simply cannot prevail on their equal protection claims after *Hawaii*.

8                   **4.      Plaintiffs Will Not Clearly Succeed On Their Equitable Estoppel Cause Of**
                            **Action.**

9

10          Plaintiffs' equitable estoppel claims appear to be based on what plaintiffs label the "secret shut

11   down" of the CAM Program in January 2017, prior to the publicly announced termination on August 16,

12   2017.  (ECF 1 at 44.)  Plaintiffs allege that they relied to their detriment on various website statements

13   that the CAM Program remained in effect.  (*Id.*)[4]

14          But, plaintiffs are not likely to succeed on their equitable estoppel cause of action, because

15   equitable estoppel is not a cause of action at all.  "Equitable Estoppel is not an affirmative claim, but

16   rather an affirmative defense."  *Johnson v. Mazza*, No. 215CV09183ODWAS, 2016 WL 5842186, at *4

17   (C.D. Cal. Oct. 4, 2016); *see also Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 n.1 (6th

18   Cir. 2009) ("[E]quitable estoppel is not a cause of action but a judicial doctrine that bars the assertion of

19   a claim or defense.").  Equitable estoppel is a tolling doctrine that can excuse a plaintiff's failure to

20   timely raise his claims.  As the Ninth Circuit has explained, "although the doctrines of equitable tolling

21   and equitable estoppel are often confused, the better reasoning states that equitable tolling applies when

22   the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who

23   knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to

24   bring suit."  *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 814 (9th Cir. 2011).

25          [4] A number of the named plaintiffs candidly acknowledge that, prior to August 16, 2017, they

26   were informed that the CAM Parole Program was on hold due to the new administration.  (*See, e.g.*,
     ECF 24-7 [Declaration of A.D.] at ¶ 12 ("After almost a month had passed, IOM told my mom that

27   everything was frozen because of the new President."); ECF 1 [Complaint] at ¶ 53 (alleging that an
     "IOM employee [informed plaintiff D.D.] that none of the CAM cases could be processed because the

28   new government had changed its position, and IOM had to wait for orders from the new
     Administration.").)

                                                                                                            17

1    Tellingly, none of the equitable estoppel cases plaintiffs cite in the immigration context endorse

2    the use of equitable estoppel as an affirmative cause of action.  (ECF 24 at 26.)  *See Salgado-Diaz v.*

3    *Gonzales*, 395 F.3d 1158, 1165-66 (9th Cir. 2005), (applying equitable estoppel to bar the INS's claim

4    of removability); *Villena v. Immigration & Naturalization Serv.*, 622 F.2d 1352, 1361 (9th Cir. 1980)

5    (holding that where "INS did not respond to [plaintiff's] petition until almost four years later [with] no

6    apparent justification for this delay[,] INS [wa]s estopped from claiming that Villena failed to

7    adequately pursue his claim for preference classification"); *Sun Il Yoo v. Immigration & Naturalization*

8    *Serv.*, 534 F.2d 1325, 1328 (9th Cir. 1976) (holding that INS could not use its "unreasonable [one-year]

9    delay in recognizing the bona fides of Yoo's petition" against him).

10    Equitable estoppel does not come into play in the context of this case.  The government is not

11    claiming that plaintiffs' challenge to the rescission of the CAM Parole Program is barred by the statute

12    of limitations or their delay.  Instead of using equitable estoppel to block one of the government's

13    defenses, as the doctrine is intended to be used, plaintiffs are attempting use the label affirmatively, as a

14    catch-all cause of action to challenge the government's change in policy.  They cannot do so.  "[C]ourts

15    invoke the doctrine of estoppel against the government with great reluctance."  *Emery Min. Corp. v.*

16    *Sec'y of Labor*, 744 F.2d 1411, 1416 (10th Cir. 1984).  "Application of the doctrine is justified only

17    where it does not interfere with underlying government policies or unduly undermine the correct

18    enforcement of a particular law or regulation."  *Id.*  Here, application of estoppel would interfere with

19    the government's policy decision to end the CAM Parole Program.  The Acting Secretary of DHS issued

20    her decision to terminate the CAM Parole Program on August 16, 2017, a decision which was

21    committed to the Secretary's discretion by law.  (AR Ex. 1.)

22    Even if equitable estoppel were available as an affirmative cause of action to challenge a change

23    in policy (which it is not), plaintiffs could not satisfy its elements.  In the rare situations in which

24    equitable estoppel may apply against the government, the party advocating estoppel must show

25    "affirmative misconduct going beyond mere negligence."  *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th

26    Cir. 1989).  In the immigration context, courts have described "affirmative misconduct" as a "deliberate

27    lie" or "a pattern of false promises."  *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en

28    banc); *see also Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000) ("Neither the failure to inform an

18

1   individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative

2   misconduct."). "[E]ven then, estoppel will only apply where the government's wrongful act will cause a

3   serious injustice, and the public's interest will not suffer undue damage by imposition of the liability."

4   *Watkins*, 875 F.2d at 707; *accord Morgan v. Gonzales*, 495 F.3d 1084, 1092 (9th Cir. 2007).  Plaintiffs

5   cannot meet this standard.

6          Plaintiffs cannot plausibly allege that the government engaged in any "affirmative misconduct

7   going beyond mere negligence."  The CAM Parole Program was not "secretly" shut down, as plaintiffs

8   allege.  Instead, after President Trump issued Executive Order 13767 on January 25, 2017, which

9   instructed the DHS Secretary to ensure that parole authority was exercised "only on a case-by-case basis

10  in accordance with the plain language of the statute" (AR Ex. 2 at AR000006), then Secretary Kelly

11  issued a February 20, 2017 implementing memorandum, instructing DHS to undertake a review of its

12  various parole policies (AR Ex. 5 at AR000030).  DHS then "conducted a careful review of the Central

13  American Minors (CAM) Parole program, and Acting Secretary of Homeland Security Elaine Duke

14  decide to terminate the program."  (AR Ex. 9 at AR000046.)  "While the CAM program was under

15  review, USCIS ceased considering or offering parole or further processing individuals who had been

16  conditionally approved for parole under the program."  (*Id.*)  This is not affirmative misconduct—there

17  is nothing nefarious about a new administration taking the time to evaluate a program that had been put

18  in place through executive action by the prior administration.  CAM Parole Program applicants, even

19  those who had been conditionally approved, were informed that the DHS Secretary retained discretion to

20  terminate parole.  (AR Ex. 48 at AR 000465.)  *See also* Ex. 17 at AR000105 ("Q.  Is there any guarantee

21  this arrangement will be permitted to proceed under the Trump Administration?  • President Obama is in

22  office until January 20, 2017.  • We are not in a position to speculate on the plans of President-elect

23  Trump.").  Although plaintiffs reference fees for "medical examinations and plane tickets" for

24  "examinations and flights [that] were never actually scheduled" (ECF 24 at 27), the termination decision

25  contemplated that such fees would be refunded.  (*See e.g.*, AR Ex. 6 at AR 000037.)  This does not

26  amount to "affirmative misconduct going beyond mere negligence."

27         Plaintiffs' equitable estoppel claims merely repackage their policy challenges.  The doctrine is

28  unavailable as an affirmative cause of action for such broad-based challenges.  And, even if it were,

19

1 plaintiffs cannot satisfy its elements.  Plaintiffs are not clearly likely to succeed on their equitable

2 estoppel claim.

3       **B.**     **Plaintiffs' Request For Preliminary Injunctive Relief Is Contrary To The Public Interest.**

4

5        Granting a preliminary injunction would be contrary to the public interest.  The balance of harms

6 and the public interest elements of the injunctive relief test merge when the government is the opposing

7 party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Courts must "pay particular regard for the public

8 consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*,

9 456 U.S. 305, 312-13 (1982).  "Particularly in cases involving important public issues which implicate

10 significant policy considerations, it is appropriate that the trial judge consider possible harm to other

11 interested parties and the public interest in deciding whether to issue the preliminary injunction."

12 *Republican Party of Pennsylvania v. Cortes*, 218 F. Supp. 3d 396, 412 (E.D. Pa. 2016).  Entry of a

13 preliminary injunction would be contrary to the public interest here.

14        At its core, plaintiffs' motion is asking for special treatment from the United States's

15 immigration laws.  It also seeks to use the courts to undermine the policy consequences of an election.

16 But, plaintiffs fail to show that their claimed "irreparable injury" outweighs the threatened harm that an

17 injunction would cause, or that it would not "adversely affect [the] public interest[.]"  *Weinberger*, 456

18 U.S. at 312; *Southdown, Inc. v. Moore McCormack Res., Inc.*, 686 F. Supp. 595, 596 (S.D. Tex. 1988)

19 (explaining that it is petitioner's burden to show that an injunction would cause "no disservice to

20 unrepresented third parties").  Any order that enjoins a governmental agency from enforcing statutes and

21 executive orders promulgated by the duly-elected representatives of the people constitutes an irreparable

22 injury that weighs heavily against the entry of injunctive relief, *see, e.g.*, *New Motor Vehicle Bd. v.*

23 *Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).  *See* AR Ex. 2 [Executive Order 13767] ("The Secretary

24 [of Homeland Security] shall take appropriate action to ensure that parole authority under section

25 212(d)(5) of the INA (8 U.S.C. § 1182(d)(5)) is exercised only on a case-by-case basis in accordance

26 with the plain language of the statute, and in all circumstances only when an individual demonstrates

27 urgent humanitarian reasons or a significant public benefit derived from such parole.").  S*ee also United*

28 *States v. Valenzuela–Bernal,* 458 U.S. 858, 864 (1982) ("The power to regulate immigration—an

20

1    attribute of sovereignty essential to the preservation of any nation—has been entrusted by the

2    Constitution to the political branches of the Federal Government."); *Fogo de Chao (Holdings) Inc. v.*

3    *U.S. Dep't of Homeland Sec.,* 769 F.3d 1127, 1151 n.10 (D.C. Cir. 2014) ("[O]ur Constitution places

4    such sensitive immigration and economic judgments squarely in the hands of the Political Branches, not

5    the courts[.]").

6         The Court's entry of a mandatory injunction against DHS would interfere with the executive

7    branch's ability to enforce the U.S. immigration laws.  For these reasons, plaintiffs' requested injunction

8    is inconsistent the public interest, and the request for a preliminary injunction should be denied.

9    **III.    NEITHER THE ALIEN PAROLE APPLICANTS NOR CASA HAS STANDING.**

10        Neither the alien parole applicants nor CASA has standing to proceed.  As such, their claims

11   must be dismissed, and they are not entitled to injunctive relief.

12        Standing requires (1) that the plaintiff has suffered an "injury in fact" that is "concrete and

13   particularized," and "actual or imminent, not conjectural or hypothetical," (2) that the injury is "fairly

14   traceable to the challenged action," and (3) that "it is likely, as opposed to merely speculative, that the

15   injury will be redressed by a favorable [judicial] decision."  *Friends of the Earth Inc., v. Laidlaw Envtl.*

16   *Servs. Inc.,* 528 U.S. 167, 180-81 (2000).  "[B]ecause standing is a necessary predicate to any exercise

17   of the Court's jurisdiction, the plaintiff and [his] claims have no likelihood of success on the merits, if

18   the plaintiff lacks standing."  *Arpaio v. Obama*, 27 F. Supp. 3d 185, 207 (D.D.C. 2014).  Similarly, an

19   absence of standing "dooms the plaintiff's ability to show irreparable harm."  *Id.*  Thus, when plaintiffs

20   lack standing, the Court must deny their requests for injunctive relief and dismiss their claims outright.

21   *Id.*

22        Under these principles, neither the alien parole applicants nor CASA has established standing

23   and their claims must be dismissed.

24        **A.    The Alien Parole Applicants Lack Article III Standing To Proceed.**

25        The alien parole applicants, who are nationals of, and currently residing in either Honduras, El

26   Salvador or Guatemala, lack standing because they cannot establish that they suffer from an injury in

27   fact.  Aliens abroad have no legally protected interest in parole, which is a wholly-discretionary

28   determination, so their inability to obtain parole under the CAM Parole Program is not a cognizable

1  legal injury in fact.

2   Establishing injury in fact requires a showing of "an invasion of a legally protected interest."

3  *Lujan,* 504 U.S. at 560; *see also Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471

4  F.3d 1100, 1104 (9th Cir. 2006).  But, "unadmitted nonresident aliens have no constitutional right of

5  entry to this country" and thus lack standing to challenge the denial of their admission, or here, parole.

6  *Benjamin v. United States Dep't of State*, No. 17-CV-03587-LB, 2018 WL 1142124, at *4 (N.D. Cal.

7  Mar. 2, 2018) (Beeler, J.).  *See also Chinese Am. Civic Council v. Attorney Gen.*, 396 F. Supp. 1250,

8  1251 (D.D.C. 1975) ("Standing apparently has never been granted to a person outside the United States

9  challenging the denial of entry or immigration eligibility."); *Chun v. Powell*, 223 F. Supp. 2d 204, 207

10 (D.D.C. 2002) ("[A]n unadmitted nonresident alien, has no standing to challenge the denial of her entry

11 into the United States.").

12  Moreover, the grant of parole under the INA is not a legally protected interest because it "is

13 clearly a discretionary decision under the statute."  *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794-95

14 (W.D. Tex. 2015) (citing 8 U.S.C. § 1182(d)(5)(A)).  An alien has no legally protected interest in a

15 discretionary immigration determination.  *See, e.g., Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th

16 Cir. 2016); *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004) (indicating that "in immigration

17 proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief");

18 *Smith v. Ashcroft,* 295 F.3d 425, 430 (4th Cir. 2002) (stating that an alien's eligibility for discretionary

19 relief is not a constitutionally protected interest).  Accordingly, the alien-plaintiffs' inability to obtain

20 parole under the CAM Parole Program does not amount to "an invasion of a legally protected interest"

21 sufficient to establish an injury in fact.  *Lujan*, 504 U.S. at 560.

22  For these reasons, the alien-parole-applicant plaintiffs lack Article III standing to proceed, and

23 their claims must be dismissed.

24  **B. CASA Also Lacks Prudential Standing To Pursue Relief On Its Own Behalf.**

25  CASA also lacks direct standing to pursue relief on its own behalf.  The government reserves for

26 another day the questions of whether CASA has associational standing to proceed on behalf of its

27 members in the United States, but CASA clearly does not have associational standing to proceed on

28 behalf of the alien-parole-applicant plaintiffs, as such plaintiffs lack standing to sue in their own right, as

discussed above.  *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (U.S. 1977) (Associational standing requires that the organizations' "members would otherwise have standing to sue in their own right.").  Nor does CASA have standing "to bring this case based on the direct harm it [allegedly] suffered."  (ECF 24 at 30.)

Direct organizational standing requires CASA to satisfy "both constitutional and prudential" requirements.  *McMichael v. Napa Cty.*, 709 F.2d 1268, 1270 (9th Cir. 1983).  CASA "lack[s] prudential standing because [it is] not within the zone of interests protected by the laws upon which [it] rel[ies]."  *Am. Baptist Churches in the U.S.A. v. Meese*, 666 F. Supp. 1358, 1368 (N.D. Cal. 1987).  "[T]he fact that the refugee organizations are attempting to assert the rights of aliens whom they serve does not provide any independent basis for standing."  *Id.*  Like the non-profit immigrant assistance organization in *Northwest Immigrant Rights Project v. United States Citizenship & Immigration Services*, CASA bases its claimed direct standing on a "different injury [than that of its members]—diversion of scarce resources—and that [distinct] injury is the toehold that supports [CASA's alleged direct] standing."  No. C15-0813JLR, 2016 WL 5817078, at *12 (W.D. Wash. Oct. 5, 2016).  (*See* ECF 24 at 30.)  But, CASA is not within the zone of interests protected by the CAM Parole Program.  *See* 2016 WL 5817078, at *12 (concluding that immigrant assistance organization was not within the zone of interests of the "INA and regulatory provisions").  *See also Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 867 (9th Cir. 2002) (Immigration Reform and Control Act of 1986 "did not give organizational plaintiffs standing to sue on their *own* behalf.") (emphasis in original).  Accordingly, because CASA is not within the zone of interests protected by the INA, CASA lacks standing to proceed with this case on its own behalf.

Because they lack standing, the claims of both CASA and the alien parole applicants must be dismissed.

**IV.   THIS COURT LACKS JURISDICTION TO ENJOIN THE PRESIDENT, AND THE CLAIMS AGAINST THE PRESIDENT MUST BE DISMISSED.**

Plaintiffs cannot succeed on their claims against President Trump, and this Court lacks authority to enter an injunction against the President.  "[T]he Supreme Court has determined that certain government officials require absolute immunity from liability in order to enable them to function

1   independently and effectively, without fear of intimidation or harassment.  Accordingly, the Court has

2   granted absolute immunity to the President[.]"  *Fry v. Melaragno*, 939 F.2d 832, 835–36 (9th Cir. 1991).

3   "[A]bsolute immunity bars suit when the allegations regarding a President's conduct are 'within the

4   perimeter of his responsibilities as chief of the executive branch,'" as they clearly are here.  *Stevens v.*

5   *Hayes*, No. A-11-CA-550 LY, 2012 WL 2572790, at *12 (W.D. Tex. July 2, 2012), *subsequently aff'd*,

6   535 F. App'x 358 (5th Cir. 2013).  Accordingly, this Court lacks jurisdiction to issue an injunction

7   against the President.  *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the

8   President, courts do not have jurisdiction to enjoin him and have never submitted the President to

9   declaratory relief.") (internal citations omitted).  As such, plaintiffs will not succeed on their claims

10  against President Trump and this Court may not enjoin him.  All claims against the President must be

11  dismissed.

12  **V.      THE COURT CANNOT ENTER CLASSWIDE, NATIONWIDE INJUNCTIVE RELIEF.**

13          Plaintiffs seek a classwide, nationwide preliminary injunction "setting aside termination of the

14  CAM Parole program . . . and reinstating the program for applicants in the pipeline at the time it was

15  officially terminated."  (ECF 24 at 31.)  Even if this Court were to conclude that the named plaintiffs are

16  entitled to preliminary injunctive relief, it could not provide such relief nationwide, to putative class

17  members.

18          As the Ninth Circuit has made clear, until a class has been certified, an injunction in a putative

19  class action applies only to the named plaintiffs.  *See Zepeda v. I.N.S.*, 753 F.2d 719, 727-28 n.1 (9th

20  Cir. 1983) (vacating class-wide preliminary injunction as overbroad, unless and until the district court

21  certified a class of plaintiffs; "[u]ntil class certification is granted, these plaintiffs are entitled to no more

22  than protection of themselves alone from the challenged INS practices"); *M.R. v. Dreyfus*, 697 F.3d 706,

23  738 (9th Cir. 2012) (enjoining enforcement of regulation only as to named plaintiffs where class

24  certification motion not yet decided by district court); *McCormack v. Hiedeman*, 694 F.3d 1004, 1020

25  (9th Cir. 2012) (same).  The Court should decline plaintiffs' invitation to enter a classwide, nationwide

26  preliminary injunction here.

27  **VI.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED.**

28          For the reasons set forth above, plaintiffs' APA, due process, equal protection and equitable

24

estoppel claims fail and should be dismissed.  Additionally, as set forth above, the alien parole applicants, who are nationals of, and currently residing in, either Honduras, El Salvador or Guatemala, lack Article III standing and should be dismissed as plaintiffs in this litigation.  CASA also lacks direct standing to sue in its own right and its direct claims should be dismissed.  Finally, as set forth above, the Court lacks jurisdiction over the claims against President Trump, and all claims against the President should be dismissed.

### CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion for a preliminary injunction in its entirety and dismiss plaintiffs' complaint.

DATED:  August 24, 2018                     Respectfully submitted,

                                            ALEX G. TSE
                                            United States Attorney

                                            */s/ Wendy M. Garbers*
                                            WENDY M. GARBERS
                                            Assistant United States Attorney