DANIEL B. ASIMOW (SBN 165661)
daniel.asimow@arnoldporter.com
MATTHEW H. FINE (SBN 300808)
matthew.fine@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California  94111
Telephone:    415.471.3100
Facsimile:    415.471.3400

JOHN A. FREEDMAN (appearance *pro hac vice*)
john.freedman@arnoldporter.com
GAELA K. GEHRING FLORES*
gaela.gehringflores@arnoldporter.com
DAVID J. WEINER (CA SBN 219753)
david.weiner@arnoldporter.com
DANA O. CAMPOS*
dana.campos@arnoldporter.com
MATEO MORRIS*
mateo.morris@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone:    202.942.5000
Facsimile:    202.942.5999

LINDA EVARTS (appearance *pro hac vice*)
levarts@refugeerights.org
KATHRYN C. MEYER (appearance *pro hac vice*)
kmeyer@refugeerights.org
MARIKO HIROSE (appearance *pro hac vice*)
mhirose@refugeerights.org
INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
40 Rector Street, 9th Floor
New York, NY  10006
Telephone:    646.459.3057
Facsimile:    212.533.4598

PHILLIP A. GERACI*
phillip.geraci@arnoldporter.com
SUSAN S. HU*
susan.hu@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
Telephone:    212.836.8000
Facsimile:    212.836.8689

*Attorneys for Plaintiffs*

*Pro Hac Vice* motion forthcoming

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.A.; *et al*., | Case No. 3:18-cv-03539-LB |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; *et al*., | Date:       October 11, 2018 Time:      9:30 a.m. |
| Defendants. | Place:     Courtroom C (15th Floor) Judge:    Hon. Laurel Beeler |

1

## TABLE OF CONTENTS

2
**Page**

3    INTRODUCTION ................................................................................................................1

4    ALLEGATIONS OF THE COMPLAINT .........................................................................2

5    LEGAL STANDARDS .......................................................................................................4

6    ARGUMENT ......................................................................................................................4

7    I.     EACH COUNT IN THE COMPLAINT STATES A CAUSE OF ACTION
            UPON WHICH RELIEF MAY BE GRANTED ....................................................4

8
            A.    Count 1 – Violation of APA ........................................................................5
9
                  1.    The Termination of The CAM Parole Program In January and
10                         February 2017 Violated The APA ..................................................6

11                 2.    The Notice Of Termination Of The CAM Parole Program in
                         August 2017 Violated the APA .......................................................8
12
                  3.    The Termination Of The CAM Parole Program Is Not Exempt
13                         From Judicial Review. ....................................................................9

14           B.    Count 2 - Accardi .......................................................................................10

15           C.    Count 3 – Due Process ...............................................................................11

16           D.    Count 4 – Equal Protection ........................................................................14

17           E.    Count 5 – Equitable Estoppel.....................................................................16

18    II.    ALL PLAINTIFFS HAVE STANDING. ..............................................................18

19           A.    The Foreign CAM Parole Applicants Have Standing.................................18

20           B.    CASA Has Direct Standing to Pursue Relief on Its Own Behalf. .............19

21    III.   THE PRESIDENT IS PROPERLY NAMED AS A DEFENDANT IN HIS
            OFFICIAL CAPACITY..........................................................................................20

22    CONCLUSION ................................................................................................................21

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcaraz v. INS*,
    384 F.3d 1150 (9th Cir. 2004 ............................................................................. 10, 11

*Anderson v. Butz*,
    550 F.2d 459 (9th Cir. 1977)................................................................................. 7

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) ............................................................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 4

*Baldwin v. Hale*,
    68 U.S. 223 (1863) .............................................................................................. 11

*Batalla Vidal v. Duke*,
    295 F. Supp. 3d 127 (E.D.N.Y. 2017) ............................................................... 20

*Batalla Vidal v. Nielsen*,
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) .............................................................. 1, 8

*Batalla Vidal v. Nielsen*,
    291 F. Supp. 3d 260 (E.D.N.Y. 2018) ............................................................... 11

*Bates v. UPS*,
    511 F.3d 974 (9th Cir. 2007)............................................................................... 18

*Benjamin v. U.S. Dep't of State*,
    No 17-cv-03587-LB, 2018 WL 1142124 (N.D. Cal. Mar. 2, 2018) ........................... 19

*Bennett v. Spear*,
    520 U.S. 154 (1997).............................................................................................. 6

*Bolante v. Keisler*,
    506 F.3d 618 (7th Cir. 2007)................................................................................. 9

*Bowen v. Mich. Acad. of Family Physicians*,
    476 U.S. 667 (1986).............................................................................................. 9

*Bustamante v. Mukasey*,
    531 F.3d 1059 (9th Cir. 2008).............................................................................. 12

*Cardenas v. Smith*,
    733 F.2d 909 (D.C. Cir. 1984) ....................................................................... 12, 18

*Cardenas v. United States*,
    826 F.3d 1164 (9th Cir. 2016) ................................................................................................ 12

*Centro Presente v. DHS*,
    No. 18-10340, 2018 WL 3543535 (D. Mass. July 23, 2018) ................................................ 20, 21

*Chinese Am. Civic Council v. Attorney General*,
    396 F. Supp. 1250 (D.D.C. 1975) ........................................................................................... 19

*Constructores Civiles de Centroamerica, S.A. (CONCICA) v. Hannah*,
    459 F.2d 1183 (D.C. Cir 1972) ............................................................................................... 19

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
    623 F.3d 633 (9th Cir. 2010) .................................................................................................... 5

*Doe v. Nielsen*,
    Case No. 5:18-cv-02349-BLF, Order Granting Plaintiffs' Motion for Partial
    Summary Judgment (N.D. Cal. July 10, 2018) ......................................................................... 19

*Doe v. Trump*, 288 F. Supp. 3d 1045 (W.D. Wash. 2017),
    *reconsideration denied*, 284 F. Supp. 3d 1182 (W.D. Wash. 2018) ....................................... 6

*Elim Church of God v. Harris*,
    722 F.3d 1137 (9th Cir. 2013) ................................................................................................. 16

*Emery Mining Corp. v. Sec'y of Labor*,
    744 F.2d 1411 (10th Cir. 1984) ............................................................................................... 18

*Encino Motorcars, LLC v. Navarro*,
    — U.S. —, 136 S. Ct. 2117 (2016) ........................................................................................ 5, 8

*Faith Action for Cmty. Equity v. Hawaii*,
    No. 13-00450 SOM/RLP, 2014 WL 1691622 (D. Haw. Apr. 28, 2014) .................................. 15

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ............................................................................................................... 5, 8

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ................................................................................................................. 20

*Fry v. Melaragno*,
    939 F.2d 832 (9th Cir. 1991) ................................................................................................... 20

*Hall v. EEOC*,
    456 F. Supp. 695 (N.D. Cal. 1978) ..................................................................................... 10, 11

*Hass v. Darigold Dairy Prods. Co.*,
    751 F.2d 1096 (9th Cir. 1985) ................................................................................................. 16

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir. 2017), *vacated as moot*, 138 S. Ct. 377 (2017) ................................ 13

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) .................................................................................. 18

*James v. U.S. Parole Comm'n*,
159 F.3d 1200 (9th Cir. 1998) ................................................................................ 10

*Jeanty v. Bulger*,
204 F. Supp. 2d 1366 (S.D. Fla. 2002), *aff'd sub nom. Moise v. Bulger*, 321 F.3d
1336 (11th Cir. 2003) ................................................................................................ 9

*Jenness v. Fortson*,
403 U.S. 431 (1971) ................................................................................................ 14

*Kelson v. City of Springfield*,
767 F.2d 651 (9th Cir. 1985) .................................................................................. 12

*Kerry v. Din*,
— U.S. —, 135 S. Ct. 2128 (2015) (Kennedy, J., concurring) .................................. 12

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................... 4

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) .................................................................................................. 9

*Knight First Amendment Inst. v. Trump*,
302 F. Supp. 3d 541 (S.D.N.Y. 2018) .................................................................... 21

*Kucana v. Holder*,
558 U.S. 233 .......................................................................................................... 10

*Lassiter v. Dep't of Soc. Servs.*,
452 U.S. 18 (1981) .................................................................................................. 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ................................................................................................ 20

*Loving v. Virginia*,
388 U.S. 1 (1967) .................................................................................................... 13

*Mach Mining, LLC v. EEOC*,
135 S. Ct. 1645 (2015) .............................................................................................. 9

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ................................................................................................ 19

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
— U.S. —, 138 S.Ct. 1719 (2018) .......................................................................... 15

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ................................................................................................ 20

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ............................................................................................ 11, 13

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ...................................................................................... 4

*Mendenhall v. Nat'l Transp. Safety Bd.*,
   92 F.3d 871 (9th Cir. 1996) ....................................................................................... 10

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) .................................................................................................. 20

*Morrison v. Jones*,
   607 F.2d 1269 (9th Cir. 1979) ................................................................................... 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .............................................................................................. 5, 8, 9

*Nat'l Ass'n of Home Builders v. Norton*,
   340 F.3d 835 (9th Cir. 2003) ..................................................................................... 10

*Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*,
   325 F.R.D. 671 (W.D.Wash. 2016) ........................................................................... 20

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*,
   477 F.3d 668 (9th Cir. 2007) ....................................................................................... 7

*Obergefell v. Hodges*,
   — U.S. —, 135 S. Ct. 2584 (2015) ........................................................................... 13

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ....................................................................................... 6

*Pennzoil Co. v. Dep't of Energy*,
   480 F. Supp. 1126 (D. Del. 1979) ............................................................................. 11

*People of Saipan ex rel. Guerrero v. U.S. Dep't of Interior*,
   356 F. Supp. 645 (D. Haw. 1973), *aff'd as modified*, 502 F.2d 90 (9th Cir. 1974) .................... 19

*Perez v. Mortg. Bankers Ass'n*,
   —U.S. —, 135 S. Ct. 1199 (2015) ............................................................................. 10

*Peter-Palican v. Gov't of the Northern Mariana Islands*,
   695 F.3d 918 (9th Cir. 2012) ..................................................................................... 16

*Rea v. Matteucci*,
   121 F.3d 483 (9th Cir. 1997) ..................................................................................... 13

*Regents of the Univ. of Cal. v. DHS*,
   298 F. Supp. 3d 1304 (N.D. Cal. 2018) ........................................................... 6, 11, 12

- v -

*Regents of the Univ. of California v. DHS*,
   279 F. Supp. 3d 1011 (N.D. Cal. 2018) .................................................................. 1, 8, 10

*Reno v. American-Arab Discrimination Comm*,
   525 U.S. 471 (1999) ............................................................................................... 10

*Robbins v. Reagan*,
   780 F.2d 37 (D.C. Cir. 1985) ................................................................................... 5

*Rosenbaum v. Washoe Cty.*,
   663 F.3d 1071 (9th Cir. 2011) ................................................................................. 12

*Salgado-Diaz v. Gonzales*,
   395 F.3d 1158 (9th Cir. 2005) ................................................................................. 17

*Samson v. City of Bainbridge Island*,
   683 F.3d 1051 (9th Cir. 2012) ................................................................................. 13

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................................................. 4

*Silva v. Bell*,
   605 F. 2d 978 (7th Cir. 1979) .................................................................................. 18

*Trump v. Hawaii*,
   — U.S. —, 138 S. Ct. 2392 (2018) ..................................................................... 15, 16

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) ........................................................................................... 10, 11

*United States ex rel. Parco v. Morris*,
   426 F. Supp. 976 (E.D. Pa. 1977) ............................................................................ 7

*United States v. Windsor*,
   570 U.S. 744 (2013) ............................................................................................... 14

*U.S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973) ............................................................................................... 14

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................................... 15

*Walker v. Reno*,
   925 F. Supp. 124 (N.D.N.Y. 1995) .......................................................................... 10

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017), *superseded by* 858 F.3d 1168 (9th Cir. 2017) ............... 4

*Watkins v. U.S. Army*,
   875 F.2d 699 (9th Cir. 1989) (en banc) ............................................................... 16, 18

- vi -

*Wenger v. Monroe*,
    282 F.3d 1068 (9th Cir. 2002).................................................................................. 16

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)............................................................................................... 12

**Statutes and Regulations**

5 U.S.C.
    §552 ....................................................................................................................... 6, 7
    §552(a)(1) ................................................................................................................... 6
    §552(a)(1)(D) .......................................................................................................... 5, 7
    §553 ....................................................................................................................... 6, 7
    §701(a)(2) ................................................................................................................... 9
    §702 ........................................................................................................................... 5
    §704 ........................................................................................................................ 5, 6
    §706 ........................................................................................................................... 9
    §706(2)(A) ................................................................................................................. 5
    §706(2)(B) ................................................................................................................. 5

8 U.S.C.
    §1182(d)(5)(f) ............................................................................................................ 8
    §1252(a)(2)(B)(ii) ...................................................................................................... 9
    §1252(g) ................................................................................................................... 10

8 C.F.R. §212.5(f) ........................................................................................................ 10

**Court Rules**

Fed. R. Civ. P.
    12(b)(1) ....................................................................................................................... 4
    12(b)(6) .............................................................................................................. 1, 4, 14
    12(d) ........................................................................................................................... 4

**Other Authorities**

Susannah W. Pollvogt, *Unconstitutional Animus*,
    81 Fordham L. Rev. 887, 930 (2012) ...................................................................... 15

MPA IN OPPOSITON TO MOTION TO DISMISS                          No. 3:18-cv-03539-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendants' Motion to Dismiss ("Motion") consists of seven lines tacked on at the end of their memorandum in opposition to Plaintiffs' Motion for a Preliminary Injunction. The Motion makes no serious attempt to show that the Complaint fails to state a claim under Rule 12(b)(6); indeed, Defendants' Motion barely discusses the Complaint at all.[1] Instead, Defendants contend that their purported merits-based showing on the likelihood of success, which turns on the Administrative Record, compels dismissal. This argument ignores all relevant procedural distinctions. A preliminary injunction determination is evidentiary and involves an assessment of the ultimate likelihood of success. A motion to dismiss, in contrast, is based on the allegations of the complaint, which must be accepted as true. All inferences are drawn in favor of the non-moving party, and the motion cannot be granted if it appears there is any cognizable legal theory upon which the plaintiff may be entitled to relief.

By any measure, the Complaint states multiple cognizable claims. As the Complaint details, Defendants shut down the Central American Minors ("CAM") Parole Program using a secret and highly irregular process. They took no account of settled expectations and offered no contemporaneous justification at all. They misrepresented to vulnerable members of the public that the policy remained in place and instructed them to make additional payments. When they finally provided notice that the Program was terminated (both prospectively and as to applicants in the pipeline) and that all conditional grants of parole had been rescinded, they again offered no reasoning for their decision. This sort of secret, chaotic, and unprecedented action has repeatedly been found unlawful, including in the immigration context. *See, e.g.*, *Regents of the Univ. of California v. DHS*, 279 F. Supp. 3d 1011, 1037-46 (N.D. Cal. 2018); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 420-33 (E.D.N.Y. 2018). If Defendants want to change immigration policy, they must do so in a fashion consistent with the Administrative Procedure Act and the Constitution.

---

[1] The Motion refers to the Complaint (ECF 1) at only one point where it characterizes the equitable estoppel claim and notes an allegation concerning a statement by an IOM employee. *See* ECF 32 at 17 & n.4.

**ALLEGATIONS OF THE COMPLAINT**

Plaintiffs' Complaint ("Cplt.") alleges in substantial detail the nature of the CAM Parole program, the reasons it was adopted, the erratic and irregular circumstances under which the program was terminated, the absence of justification offered when formal notice of termination was belatedly published in the Federal Register, and the record of derogatory statements by key decision-makers that supports an inference that the termination of the program was motivated by animus against Latinos.

As the Complaint explains, the Government developed the CAM Program, which had both refugee and parole components, as part of the response to the humanitarian crisis of unaccompanied Central American children arriving at the Southern Border. Cplt. ¶27. Many of these children sought to reunify with parents or other family members in the United States. *Id.* ¶28. The Government was concerned about the dangers of the overland journey, including grave risks of death, debilitating injury or sexual assault, and the resulting crisis at the southern border as the United States struggled to meet its obligations under federal law to shelter, place, and provide legal process to the children. *Id.* ¶¶29, 33. Yet as conditions in Central America worsened, it appeared that more and more unaccompanied minors would risk this journey. *Id.* ¶31. CAM was created in 2014 to provide a "safe, legal and orderly alternative to the dangerous journey that some children are taking to reach the United States." *Id.* ¶36.

Like prior programs created by the Government to address humanitarian crises in particular countries, CAM was structured as a dual refugee/parole program. *Id.* ¶¶37, 39. Parents legally living in the United States initiated the process by applying on behalf of their children in Honduras, El Salvador, and Guatemala. *Id.* ¶¶40-41. Parents provided evidence of the familial relationship, and the children, in turn, completed interviews and DNA tests in the capital cities of their respective home countries. *Id.* ¶42. If the interviews showed a well-founded fear of persecution, the child could be accepted as a refugee for resettlement in the United States. *Id.* ¶37. But even if the child did not meet the criteria for refugee admission, he or she was considered on a case-by-case basis for parole. *Id.* ¶38. Travel was permitted once the child cleared a medical exam and the parent in the United States paid for airline tickets. *Id.* ¶42. The program successfully reunited over 3,000

individuals with their relatives in the United States (1,627 as refugees and 1,465 as parolees).  *Id.*
¶44.

As detailed in the Complaint, the President campaigned on a xenophobic platform of
hostility to immigrants, with particular animus directed at Latinos and Central Americans.  *Id.* ¶¶45-
46.  This hostility continued even after the President was inaugurated.  *Id.* ¶82.  Within days of his
taking office, the Administration secretly shut down the CAM Parole program by halting all
interviews or other processing of applicants and withholding travel authorization to children who
had already been conditionally approved for parole.  *Id.* ¶¶47-55.  The Government failed to inform
the public of the shutdown of the program; rather, it publicly stated that the program remained in
place and solicited and accepted funds from parents for medical tests and airfare.  *Id.* ¶¶56-60.  In
reliance on these representations, CAM applicants, including Plaintiffs here, incurred substantial
expense and subjected themselves to continuing risk of traveling through dangerous situations to
pursue their CAM applications.  *Id.* ¶¶84-92.

Seven months after its secret termination, Defendants announced that they were terminating
the CAM Parole program, effective immediately, and retroactively rescinding all prior conditional
grants of parole.  *Id.* ¶¶64-65.  The mass rescission revoked grants of parole from nearly 3,000
children and family members.  *Id.* ¶¶2, 83.  The Federal Register notice of these actions provided no
explanation or reasons whatsoever.  *Id.* ¶66.  The termination of the CAM Parole program differed
significantly from the phase-outs of prior refugee/parole programs, which happened publicly, for
reasons of changed circumstances in the country conditions that had initially warranted the
programs, and with ample time for individuals in the pipeline to complete processing.  *Id.* ¶73.  The
termination also occurred against a backdrop of numerous other hostile actions directed towards
Latino immigrants, many of which have been found unlawful.  *Id.* ¶¶76-82.

The Complaint details the devastating harm to Plaintiffs, and to the class that they seek to
represent, as a result of Defendants' summary termination of the promise of family reunification.
Parents' hopes of reuniting with their children have been dashed, children face grave danger in their
home countries (some of them cannot even leave their homes) or may even risk the dangerous
overland journey to the border, and funds extracted from the families have not been returned.  *Id.*

¶¶8-13, 83-118.

The Complaint contains five counts. It alleges that the secret shutdown and subsequent "official" termination of the CAM Parole program and the mass rescission of conditional parole violated the Administrative Procedure Act ("APA"), because they were arbitrary and capricious. It alleges that Defendants failed to follow their own procedures, as required by the APA. It alleges that Defendants have violated the Equal Protection and Due Process guarantees of the Constitution. Finally, it asserts that Defendants should be equitably estopped from terminating the CAM Parole program and mass rescinding conditional parole approvals based on the affirmative misconduct alleged in the Complaint.

**LEGAL STANDARDS**

In evaluating a motion to dismiss under Rule 12(b)(6), the Court is required to accept the non-conclusory allegations of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be drawn in favor of the plaintiff. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Moreover, a motion should not be granted if the complaint alleges any cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In general, the court should not consider materials outside the pleadings, unless it converts the motion to one for summary judgment and provides the non-moving party with an opportunity to respond. *See* Fed. R. Civ. P. 12(d).

Defendants also raise standing arguments, which are reviewed under Rule 12(b)(1). In evaluating a motion under Rule 12(b)(1), it is appropriate to consider the complaint along with any other evidence. *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017), *superseded by* 858 F.3d 1168 (9th Cir. 2017); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (court may review affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction).

**ARGUMENT**

**I.    EACH COUNT IN THE COMPLAINT STATES A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED**

Contrary to Defendants' conclusory argument, each count in the Complaint adequately

1    pleads all necessary elements with more than sufficient detail.[2]

2        **A.        Count 1 – Violation of APA**

3        The Complaint alleges that Defendants took three related actions regarding the CAM Parole

4    program.  They terminated it prospectively (closing it to new applicants), they terminated it as to

5    people who were in the pipeline and had applied with the understanding they would be considered

6    for parole if ineligible for refugee resettlement, and they terminated it retroactively by rescinding

7    parole from nearly 3,000 people who had received conditional approvals and were waiting for travel

8    authorizations.  The Complaint alleges that Defendants took these actions secretly in January and

9    February of 2017, and then publicly in August 2017.  Each of these actions is alleged to violate the

10   Administrative Procedure Act, in multiple ways.

11       The APA permits persons adversely affected or aggrieved by final agency action to obtain

12   judicial review of the action.  5 U.S.C. §§702, 704.  Among other bases, agency actions may be set

13   aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

14   law" or if they are "contrary to constitutional right, power, privilege or immunity."  5 U.S.C.

15   §706(2)(A), (B).  Agency actions fail the requirement if they are unreasonable or not reasonably

16   explained.  *Robbins v. Reagan*, 780 F.2d 37, 47 (D.C. Cir. 1985); *Ctr. for Biological Diversity v.*

17   *U.S. Dep't of Interior*, 623 F.3d 633, 648 (9th Cir. 2010) (agency must "support and explain their

18   conclusions with evidence and reasoned analysis.").  Agencies must consider each important aspect

19   of the problem, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

20   29, 43 (1983), and their burden of explanation is higher when changing policies that engendered

21   serious reliance interests.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009);

22   *Encino Motorcars, LLC v. Navarro*, — U.S. —, 136 S. Ct. 2117, 2125-27 (2016).  In addition, a

23   separate provision requires agencies to "separately state and currently publish in the Federal

24   Register . . . substantive rules of general applicability . . . and statements of general policy or

25   interpretations of general applicability."  5 U.S.C. §552(a)(1)(D).  If "a matter required to be

26

27       [2] Defendants' Motion incorporates by reference arguments from its preliminary injunction
     opposition predicated on analysis of the Administrative Record, not only as to the APA claim but as
28   to the constitutional and estoppel claims as well. No attempt is made to show that these materials
     are subject to judicial notice or otherwise properly considered on a motion to dismiss.

published in the Federal Register" is "not so published," then "a person may not in any manner

be . . . adversely affected by" such matter.  *Id.* §552(a)(1).

Whether Plaintiffs are likely to prevail on the APA claim is discussed at length in the

Motion for Preliminary Injunction, but it is clear that Defendants' Motion to Dismiss fails when the

complaints' allegations are viewed in Plaintiff's favor, as they must be on Defendants' motion.

### 1.     The Termination of The CAM Parole Program In January and February 2017 Violated The APA

The Complaint alleges that Defendants' secret shutdown of the CAM Parole program in

January and February was final agency action under 5 U.S.C. §704.  Cplt. ¶128.  A final action is

one that marks the "consummation" of the agencies' decision-making process and determines

"rights or obligations . . . from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S.

154, 177-78 (1997) (internal quotation marks omitted).  Finality is determined "in a pragmatic and

flexible manner."  *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).  As

alleged in the Complaint, following Defendants' secret decision to end the CAM Parole program, it

cancelled all program interviews, ceased issuing decisions to post-interview applicants, stopped

scheduling medical examinations, and blocked all travel (even for conditionally admitted parolees

who had completed every step of the process).  Cplt. ¶¶48-54.[3]  But Defendants did not provide any

notification to the public until they published a notice in the Federal Register eight months after the

action was adopted.  Cplt. ¶¶56, 64

In their brief, Defendants fail to address the Section 552 violation.[4]  As alleged in the

---

[3] Defendants do not make any attempt in their brief to argue that the January/February action
was not final agency action within the meaning of Section 704.  They do contend that they did not
engage in a "secret shutdown" of the program because they were merely "pausing" and "taking the
time to evaluate a program that had been put in place through executive action by the prior
administration." Motion at 11.  The allegations of the Complaint, however, make clear that the
Program fully ceased operation in the January/February time frame and had severe legal
consequences for Plaintiffs.  Indeed, Defendants concede in their Motion that they "cease[d]" all
processing under the program in February 2017.  Whether a mere "suspension" or an indefinite
delay, such action is sufficiently final for review under the APA.  *See Doe v. Trump*, 288 F. Supp.
3d 1045, 1070 (W.D. Wash. 2017) (rejecting argument that "suspension" of refugees is not subject
to review), *reconsideration denied*, 284 F. Supp. 3d 1182 (W.D. Wash. 2018).

[4] Defendants cite Judge Alsup's decision in *Regents of the University of California v. DHS*, 298
F. Supp. 3d 1304, 1310 (N.D. Cal. 2018), but that case addresses whether or not a rule or regulation
is subject to notice and comment under Section 553.  Section 552 applies to any "substantive rule of

Complaint, Plaintiffs were severely and adversely affected by the secret termination and the lack of notice. Conditionally paroled Plaintiffs who would have traveled to the United States had the program continued were prevented from doing so. Cplt. ¶¶8-13, 49, 51, 53-54. Plaintiffs advanced funds to the Government, traveled for medical exams or other program appointments (often at great danger), and invested in furniture and clothing for the children they thought would soon be arriving. *Id.* These unchallenged allegations adequately state a claim under Section 552. *See, e.g.*, *Anderson v. Butz*, 550 F.2d 459, 462-63 (9th Cir. 1977) (food stamp applicants entitled to evaluation of their claim under prior rule when secret rule change not published in Federal Register); *United States ex rel. Parco v. Morris*, 426 F. Supp. 976, 978, 986 (E.D. Pa. 1977) (immigrant entitled to voluntary departure where application would have been granted under former policy and policy change not published in Federal Register).

In addition, the agency action in January/February 2017 was arbitrary and capricious. Defendants argue that a trier of fact will ultimately conclude, upon the purported Administrative Record considered as a whole, that the termination of the CAM Parole program was not arbitrary and capricious. Motion at 9-12. This is not the correct inquiry on a motion to dismiss, which assesses the factual allegations in the Complaint, and which draws all inferences in Plaintiffs' favor. And even if the Administrative Record is considered on this motion, virtually all materials about the termination post-date the January/February agency action and cannot support its reasonableness. *See Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 689 (9th Cir. 2007) (rejecting agency's claimed reliance on memorandum in administrative record because agency "could not have relied on" document drafted after the decision). Only two documents in the record are prior to or reasonably contemporaneous with the decision: Executive Order 13,767 issued on January 25, 2017 (the "Order") and a memorandum from then Homeland Security Secretary John Kelly issued on February 20, 2017 ("the "Kelly Memo"). *See* Cplt. ¶¶62-63. Neither provides a substantive justification for the termination of the CAM Parole program. Neither even mentions the program. There is also no evidence in the record that the relevant decisionmakers considered these documents

---

general applicability" or a "statement of general policy," whether or not Section 553 also applies. *See* 5 U.S.C. §552(a)(1)(D).

at the time they ended the program.  In any case, the termination of the CAM Parole program is

inconsistent with these dictates because the Order and Kelly Memo:

- Focus on the prevention of illegal immigration across the southern border, but the CAM Parole program provided a legal pathway for people to come into the country;

- Direct that parole should be exercised on a case-by-case basis, but the CAM Parole Program *did* require a case-by-case determination of parole eligibility.  *See* Cplt. ¶¶36, 38, 40-41, 42(a)-(i); [5]

- Direct that parole should be granted "sparingly," but a complete and total elimination of parole is not consistent with a directive exercise discretion "sparingly."

Moreover, neither document addresses individuals who already have a conditional grant of parole or

in any way justifies revoking that grant.

In addition, neither the Order nor the Kelly Memo bears any hallmarks of a reasoned and

thoughtful consideration of the problem.  They do not discuss the reasons for the creation of the

CAM Parole program, the deteriorating conditions in Central America, or the important reliance

interests the program had created.  *See generally State Farm.*, 463 U.S. at 43 (agency action is

arbitrary and capricious where it "failed to consider an important aspect of the problem"); *FCC v.

Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009); *Encino Motorcars, LLC v. Navarro*, —

U.S. —, 136 S. Ct. 2117, 2125-27 (2016).  In short, the agencies failed to provide any meaningful

explanation, much less one meeting the heightened standard that applies when there is a change in a

policy that had engendered serious reliance interests.

**2.      The Notice Of Termination Of The CAM Parole Program in August 2017 Violated the APA.**

The formal Federal Register notification of the termination of the CAM Parole program in

---

[5] To the extent that Defendants are arguing that the CAM Parole program was unlawful because parole can only be considered on a "case-by-case" basis, that conclusion is an erroneous statement of law as applied to CAM.  It is also similar to the argument that the DACA program was unlawful because it took a programmatic approach to deferred action.  Most courts have found it was legal error to rescind the DACA program on this basis. *See, e.g.*, *Regents of the Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011, 1039 (N.D. Cal. 2018) (programmatic approach to deferred action not unlawful); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d at 425 (arbitrary and capricious to rescind DACA based on argument it improperly constrained agency discretion).  A programmatic approach to *considering* parole applications, but where each application still receives individualized attention, is fully consistent with the Immigration and Naturalization Act.  The relevant provision, Section 1182(d)(5)(f), limits the Secretary's discretion with respect to parole *determinations*, but the statute is silent as to how the Secretary must *consider* parole applications.

August 2017 also violated Section 706.  The Federal Register notice offers some paragraphs of background about what the program was and how it operated before it was terminated, but no actual reason, analysis or justification for the termination.  It simply says "DHS is rescinding the discretionary CAM parole policy."  There is no discussion of the country conditions that the CAM Parole program responded to, no consideration of reliance interests, and no explanation of why the program was being terminated immediately and retroactively with respect to individuals who had not traveled.  *See* Cplt. ¶65.  As Defendants concede, a textbook example of arbitrary action is where the agency has failed to provide "a satisfactory explanation for its action."  Motion at 9 (citing *State Farm.*, 463 U.S. at 43).  The bare bones Federal Register notice fails to provide any explanation for Defendants' action, much less a satisfactory one.

### 3. The Termination Of The CAM Parole Program Is Not Exempt From Judicial Review.

Defendants point out in a footnote that certain parole decisions are not subject to judicial review under a provision of the Immigration and Naturalization Act, 8 U.S.C. §1252(a)(2)(B)(ii) and asserts that "[t]his jurisdictional issue further counsels against entry of a preliminary injunction."  *See* Motion at 10 n.3.  It is unclear if Defendants are arguing that termination of the CAM Parole program is itself exempt from judicial review under 5 U.S.C. §701(a)(2) (which Defendants do not cite).  But any such argument would fail.  There is a "strong presumption favoring judicial review" of agency action and Defendants face a "heavy burden" in arguing that Congress intended to preclude judicial review.  *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) (internal quotation marks omitted); *see also Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986).  The cases cited by Defendants involve challenges to *individual* immigration decisions.[6]  None of these cases address termination of an entire program, and courts have routinely rejected the argument that because certain immigration decisions are non-reviewable (e.g., granting

---

[6] Most of the cited decisions by Defendants do not actually concern parole.  *See, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753 (1972) (individual sought visa to enter United States); *Bolante v. Keisler*, 506 F.3d 618 (7th Cir. 2007) (individual foreign national sought bail pending review of denial of application for asylum); *Jeanty v. Bulger*, 204 F. Supp. 2d 1366 (S.D. Fla. 2002), *aff'd sub nom. Moise v. Bulger*, 321 F.3d 1336 (11th Cir. 2003) (denying writ of habeas corpus to Haitian asylum applicants held in immigration detention).

1  or denying deferred action), an entire administrative program involving those decisions is shielded

2  from judicial review (e.g., DACA).  *See Reno v. American-Arab Discrimination Comm.*, 525 U.S.

3  471, 482 (1999) (rejecting argument that §1252(g) precluded judicial review of programmatic

4  challenge to removal orders); *Regents*, 279 F. Supp. 3d at 1031-32; *Kucana v. Holder*, 558 U.S.

5  233, 252-53 (2010) (finding reviewable order denying motion to reopen removal proceedings).

6  **B.      Count 2 - Accardi**

7         The second count of the Complaint alleges that Defendants' conduct in connection with the

8  termination of the CAM Parole program violated the core principle set forth in *United States ex rel.*

9  *Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954), that agencies must abide by their own

10  regulations and sub-regulatory guidance, especially where the guidance confers benefits on

11  individuals or is intended to protect their interests.  *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th

12  Cir. 2004); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *Mendenhall*

13  *v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 875 (9th Cir. 1996).  Defendants argue that *Accardi* does

14  not apply because the CAM Parole program was not a formally promulgated regulation, but they

15  ignore that their own duly promulgated regulation required them to "issue[ ] an appropriate

16  document authorizing travel" to individuals conditionally approved for parole.[7]  8 C.F.R. §212.5(f).

17  Moreover, *Accardi* extends to non-formally promulgated procedures. *See, e.g.*, *Alcaraz*, 384 F.3d at

18  1162 (administrative agencies are required to adhere to their own internal procedures, and collecting

19  cases).[8]

20

21         [7] Indeed, Defendants all but concede that they were required to comply with the regulation.  *See*
    Opp. at 3, ln. 9-16 ("Conditional parole authorization permits the applicant to travel to the United
22  States," and thus, DHS or DOS "will issue travel documents to enable the applicant to travel to a
    U.S. port-of-entry[.]").

23         [8] The cases Defendants cite are inapposite.  *See, .e.g.*, *Perez v. Mortg. Bankers Ass'n*, —U.S. —,
24  135 S. Ct. 1199, 1206 (2015) (concerning the inapplicability of notice-and-comment rulemaking to
    changes to interpretive rules); *Walker v. Reno*, 925 F. Supp. 124, 131 (N.D.N.Y. 1995) (*Accardi*
25  does not apply to rules which "ha[ve] been given no substantive effect by [the agency]").  Although
    *Hall v. EEOC*, 456 F. Supp. 695, 703 (N.D. Cal. 1978), posits that the *Accardi* claim brought there
26  must be coterminous with a constitutional due process claim, Plaintiffs bring this claim under the
    *Accardi* theory recognized by the Ninth Circuit that holds that agencies must follow their own
27  procedures "even where the internal procedures are possibly more rigorous than otherwise would be
    required." *Alcaraz*, 384 F.3d at 1162 (collecting cases) (internal quotation marks omitted); *but see*
28  *James v. U.S. Parole Comm'n*, 159 F.3d 1200, 1205-06 (9th Cir. 1998) (holding that an interpretive
    procedural rule intended only for internal use did not create due process right for prisoner and citing
    alternative line of cases holding that such rules cannot be enforced).  Moreover, even in the context

Defendants also argue that *Accardi* does not prevent them from amending regulations or informal guidance, but that misses the point. The issue is not whether an agency can change its rules through proper procedures, but whether the agencies here followed their own rules. If Defendants are correct that CAM Parole was not terminated until August 2017, they ignored their program rules, including the rule requiring issuance of travel documentation, during the period between January and August. If it was terminated earlier, such termination was not in compliance with law. *See Pennzoil Co. v. Dep't of Energy*, 480 F. Supp. 1126, 1131 (D. Del. 1979) (agency may amend rules "as long as the amendment process is procedurally adequate and the amended regulation is consistent with the authorizing statute.").[9]

## C.    Count 3 – Due Process

The Due Process Clause requires that "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified." *Baldwin v. Hale*, 68 U.S. 223, 233 (1863). The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The third count of the Complaint alleges a violation of Due Process as a result of the manner in which the CAM Parole program was terminated. Focusing almost exclusively on the *Regents* case, Defendants argue that Plaintiffs' due process claim should be dismissed because Plaintiffs have no constitutionally protected liberty interest in the "continuation of the CAM program" or parole in general. *See* Motion at 14 (citing *Regents of Univ. of Cal.*, 298 F. Supp. 3d 1304 (N.D.

---

of a constitutional due process claim, courts have recognized that individuals are entitled to have their applications considered pursuant to the procedures an agency claims to use . *See, e.g.*, *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 283 (E.D.N.Y. 2018) (holding that plaintiffs stated a procedural due process claim in having their DACA renewal requests considered where USCIS told them in letter that it "will adjudicate" requests received by certain date).

[9] Defendants also argue that Plaintiffs' *Accardi* argument should fail because Plaintiffs lack a cognizable due process interest. Motion at 13. As explained below, Plaintiffs have constitutionally protected liberty interests in the companionship of their children. More importantly, the district court opinion Defendants cited is not binding on this Court in the face of contrary Ninth Circuit authority. *Compare Hall v. EEOC*, 456 F. Supp. at 703 (*Accardi* claim must be coterminous with constitutional due process claim), *with Alcaraz*, 384 F.3d at 1162 (agencies must follow their own procedures "even where the internal procedures are possibly more rigorous than otherwise would be required" and collecting cases) (internal quotation marks omitted).

1    Cal. 2018)).  This argument misconstrues the protected interest at issue here.

2           The Complaint alleges facts establishing the U.S.-based parent Plaintiffs' interest in the

3    companionship of their children (Compl. ¶¶3, 83, 93-118, 137) which is a fundamental liberty

4    interest.  The interest at issue here is not, as Defendants characterize it, "temporary parole relief."

5    Motion at 13.[10]  As exemplified by this case and clear from their other family separation initiatives,

6    Defendants seem not to understand that "a parent has a fundamental liberty interest in

7    companionship with his or her child." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir.

8    2011); *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985) ("a parent has a constitutionally

9    protected liberty interest in the companionship and society of his or her child"); *see generally*

10   *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 27 (1981) ("This Court's decisions have by now

11   made plain beyond the need for multiple citation that a parent's desire for and right to the

12   companionship, care, custody, and management of his or her children is an important interest that

13   undeniably warrants deference and, absent a powerful countervailing interest, protection").  This

14   right extends to non-citizens present in the United States.  *Morrison v. Jones*, 607 F.2d 1269

15   (9th Cir. 1979) (concluding that a German foreign national residing in the United States has an

16   "interest as the mother of the child to preserve her access to the child" to challenge the deportation

17   of her German citizen child to Germany); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due

18   Process Clause applies to all 'persons' within the United States, including aliens, whether their

19   presence here is lawful, unlawful, temporary, or permanent"); *Kerry v. Din*, — U.S. —, 135 S. Ct.

20   2128, 2139 (2015) (Kennedy, J., concurring) (in case challenging visa denial, assuming that wife

21   had protected liberty interest in companionship of her husband)[11]; *Cardenas v. United States*, 826

22   F.3d 1164, 1172 (9th Cir. 2016) (same); *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir.

23   2008) (U.S.-based person challenging denial of visa to immediate family is "entitled" under due

24   process to judicial inquiry into reason).

---

[10] In contrast, in *Regents*, plaintiffs challenging the rescission of DACA argued that they had a protected interest in discretionary relief itself or in its renewal, in part based on their serious reliance interests.  *See* Motion at 13-14 (citing *Regents*, 298 F. Supp. 3d at 1310-11).

[11] Because the *Din* Court was "unable to agree on a single rationale for denying relief," Justice Kennedy's concurring opinion is the controlling opinion.  *Cardenas v. United States*, 826 F.3d 1164, 1167 (9th Cir. 2016).

1    Defendants also argue that a mass rescission through a policy change does not trigger due

2  process protections. This is wrong for at least three reasons. First, even where broad policies are

3  concerned, the Executive cannot simply issue wholly arbitrary or irrational rules or act outside of

4  the normal manner prescribed by law. *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060

5  (9th Cir. 2012); *Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997). An arbitrary and capricious

6  action violates due process, and for the reasons discussed, *supra*, Plaintiffs have adequately pled

7  their Due Process claim.

8    Second, Plaintiffs challenge not only general policy changes but Defendants' decision to

9  vacate case-by-case findings of eligibility for conditional parole in a single, across-the-board

10  decision, without notice and the opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. at 332-

11  49 (analyzing whether broadly applicable administrative regulations and procedures which resulted

12  in termination of individual's benefits without a pre-termination hearing violated due process).

13  Under *Mathews*, the Court must balance three factors in evaluating the process due: "the private

14  interest that will be affected," "the risk of an erroneous deprivation of such interest through the

15  procedures used, and the probable value, if any, of additional or substitute procedural safeguards,"

16  and "the Government's interest." *Id.* at 335. Here, Plaintiffs' detailed factual allegations in the

17  Complaint are more than sufficient to plead their entitlement to relief under *Mathews*: the interest in

18  family reunification and humanitarian assistance is high, *Hawaii v. Trump*, 859 F.3d 741, 784 (9th

19  Cir. 2017), *vacated as moot*, 138 S. Ct. 377 (2017), the risk of erroneous deprivation is high, and the

20  government interest is low given that the Defendants have already once decided, on a case-by-case

21  basis, that these individuals are entitled to conditional parole status. *See* Cplt. ¶¶27-33, 36-38, 40-

22  42, 47-60, 64-68, 70-73, 83-118, 133.

23    Third, denying a fundamental right based on no purpose other than to "disrespect and

24  subordinate" a protected class is "so directly subversive of the principle of equality at the heart of

25  the [Due Process Clause]" that it "deprive[s these persons] of liberty without due process of law."

26  *Obergefell v. Hodges*, — U.S. —, 135 S. Ct. 2584, 2603-05 (2015); *see Loving v. Virginia*, 388

27  U.S. 1, 12 (1967). Plaintiffs' detailed factual allegations in the Complaint sufficiently plead that

28  Defendants deprived them of their fundamental liberty interest for no purpose other than to

1    "disrespect and subordinate" Latinos.  *See* Cplt. ¶¶45-92.  Plaintiffs' Due Process claims cannot be

2    dismissed under Rule 12(b)(6).

3            **D.      Count 4 – Equal Protection**

4            Count 4 of the Complaint alleges that the Defendants violated the Equal Protection principle

5    in their decision to terminate the CAM Parole program and implement mass rescission of

6    conditional approval of parole.  The Complaint alleges that the actions were "substantially

7    motivated by discriminatory intent" as indicated by the lack of normal process, absence of

8    legitimate reasons, and the President's history of racial slurs directed towards Latinos and

9    particularly Central Americans.  Cplt. ¶¶144; *see also id.* ¶¶45-46, 76-82.  The Complaint also

10   alleges divergent treatment from precedent in ending prior refugee/parole programs: that in contrast

11   with the sudden and draconian shutdown of CAM Parole, when addressing prior programs

12   (benefitting individuals not of Central American descent) the Government used a reasonable phase-

13   out process that gave individuals time to order their affairs and permitted travel for those

14   conditionally approved for parole.  *Id.* ¶73.

15           Defendants miscast the equal protection claim.  Motion at 16.  The point is not that Plaintiffs

16   are "no longer receiving preferential treatment" and that the "rescission of the CAM Parole

17   Program . . . put them on the same footing as nationals of other countries,"  but that the abrupt

18   termination of the CAM Parole program departed from well-established precedent for ending a

19   parole/refugee program and was effectuated against a backdrop of unrelenting invective from the

20   President.  Cplt. ¶¶ 45-69, 73, 76-82.  Defendants simply ignore this aspect of the equal protection

21   claim.  Moreover, the CAM Parole program was adopted in response to a severe humanitarian crisis

22   present in El Salvador, Guatemala, and Honduras and not, say, in Western Europe.  "Sometimes the

23   grossest discrimination can lie in treating things that are different as though they were exactly

24   alike . . . ."  *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

25           These allegations of the Complaint state a claim under two different theories.  First, the

26   Equal Protection principle of the Constitution is offended when government officials take adverse

27   actions based on the "desire to harm a politically unpopular group."  *U.S. Dep't of Agric. v. Moreno*,

28   413 U.S. 528, 534 (1973); *United States v. Windsor*, 570 U.S. 744, 774-75 (2013) (DOMA law

1    unconstitutional because motivated by desire to injure unpopular group).  The Supreme Court

2    recently reaffirmed that animus is central to evaluation of constitutional claims.  *See Masterpiece*

3    *Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, —U.S.—, 138 S. Ct. 1719, 1729-32 (2018) (state

4    agency acted unconstitutionally when motivated by hostility to religion).  The Complaint makes out

5    a claim of prohibited animus-based governmental action.  *See* Susannah W. Pollvogt,

6    *Unconstitutional Animus*, 81 Fordham L. Rev. 887, 930 (2012) (animus acts as "a doctrinal silver

7    bullet," such that "no law found to be based in animus should be permitted to stand").

8          Second, the Complaint alleges an equal protection claim under traditional analysis:

9    Defendants have acted with a discriminatory purpose and lack a sufficient justification for their

10   action.  Even if the termination of the CAM Parole program is facially neutral, there is no question

11   that it disproportionately impacts Latinos and Central Americans in particular.  When the

12   Government engages in facially neutral action, a discriminatory purpose may be inferred under the

13   standard in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252

14   (1977).  That decision sets forth a number of factors to be considered, including the history of the

15   decision, the sequence of events leading up to the decision, departures from normal procedure, and

16   contemporaneous statements by members of the decision-making body.  *See id.* at 267-68.  The

17   Complaint alleges each of these elements in detail.  *See* Cplt. ¶¶28-82.  Once a discriminatory

18   purpose is shown, the question becomes whether the Government can proffer a sufficient

19   justification for its action and the standard by which that justification is reviewed—strict scrutiny or

20   rational basis review.  The Complaint plausibly alleges the absence of sufficient justification, even

21   under a rational basis standard.  *See* Cplt. ¶¶76-77.

22         The validity and sufficiency of any justification is a fact issue that cannot be resolved on a

23   motion to dismiss.  *See Faith Action for Cmty. Equity v. Hawaii*, No. 13-00450 SOM/RLP, 2014

24   WL 1691622, at **11-14 (D. Haw. Apr. 28, 2014) (the "sensitive inquiry" into decisionmakers'

25   intent under the *Arlington Heights* framework "can only occur based on evidence presented after

26   discovery").  But to the extent the Court considers Defendants' purported justifications—which are

27   more squarely at issue on the Preliminary Injunction motion—they do not support dismissal.  *Trump*

28   *v. Hawaii*, — U.S. —, 138 S. Ct. 2392 (2018), on which Defendants primarily rely, found on a

1  detailed record submitted with a preliminary injunction motion that national security concerns were

2  sufficient to justify the Government's third attempt to impose a partial travel ban as to nationals of

3  certain countries that did not adequately share security information with the United States. *Id.* at

4  2419. *Hawaii* was not decided on a Motion to Dismiss, and in any event the Defendants do not

5  argue that any such national security justification is present in this case. The other justification

6  advanced by Defendants—"the belief that parole authority should only be exercised sparingly, on

7  an individual, case-by-case basis, and that the use of parole authority to create immigration

8  programs not established by Congress is inappropriate" (Motion at 15)—is not a justification that

9  matches Defendants' actions. The CAM Parole program *did* operate on a case-by-case basis, Cplt.

10  ¶38, and in any event this justification says nothing about why the CAM Parole program was

11  terminated secretly and retroactively, in sharp contrast to the manner in which all similar programs

12  were treated. *Id.* ¶73.

13      **E.      Count 5 – Equitable Estoppel.**

14          Contrary to Defendants' contention that equitable estoppel is "not a cause of action at all,"

15  Motion at 17, Ninth Circuit precedent recognizes an affirmative cause of action for equitable

16  estoppel. In an *en banc* decision that Defendants cite, the Ninth Circuit relied on the merits of the

17  plaintiff's affirmative equitable estoppel claim to affirm a district court's order enjoining the U.S.

18  Army from refusing to reenlist the plaintiff. *See Watkins v. U.S. Army*, 875 F.2d 699, 705-11 (9th

19  Cir. 1989) (en banc). In contrast to Defendants' non-binding authority, the Ninth Circuit has

20  repeatedly considered affirmative equitable estoppel claims. *See, e.g.*, *Peter-Palican v. Gov't of the

21  Northern Mariana Islands*, 695 F.3d 918, 920 (9th Cir. 2012) (remanding case for consideration of

22  plaintiff's affirmative equitable estoppel claim); *Elim Church of God v. Harris*, 722 F.3d 1137,

23  1143-44 (9th Cir. 2013) (considering merits of plaintiff's affirmative equitable estoppel claim);

24  *Wenger v. Monroe*, 282 F.3d 1068, 1076-77 (9th Cir. 2002) ("A claim for equitable estoppel lies

25  only where the party to be estopped has engaged in conduct that causes justifiable reliance by the

26  party asserting the claim.").[12]

27

28      [12] *See also Hass v. Darigold Dairy Prods. Co.*, 751 F.2d 1096, 1099-101 (9th Cir. 1985)
   (discussing "related" doctrines of equitable and promissory estoppel, and noting plaintiffs "might
   well find relief under either estoppel doctrine, especially in view of the fundamental idea that

1        Plaintiffs have alleged each of the elements required to bring an estoppel claim against the

2    government under Ninth Circuit precedent, and Defendants have opted not to contest most of them.

3    Defendants do not deny that they knew the true facts of the shutdown of the CAM Parole program,

4    nor that they intended the necessary consequences of their actions—that the program would cease

5    processing CAM applications.  They also do not contest that Plaintiffs relied on Defendants'

6    conduct to their detriment,[13] and do not seriously argue that Plaintiffs were aware that Defendants

7    had completely ceased processing applications.[14]

8        The only element contested by Defendants is whether they engaged in affirmative

9    misconduct.  They claim that the program was not "secretly" shut down.  Motion at 18-19.  But they

10   do not deny that following its January/February 2017 actions, it continued to represent that IOM

11   and USCIS "will" fully process applications, *see* Cplt. ¶¶42(f)-(i), 56-60, 133, and even Defendants'

12   brief acknowledges their public website for conditionally paroled applicants stating that "there is no

13   planned end date for the CAM parole program"—which remained active into summer 2017,

14   Cplt.¶57, while Defendants had in fact "ceased considering or offering parole or further processing

15   individuals who had been conditionally approved for parole under the program," Motion at 19.  Nor

16   do Defendants contest that they continued to solicit and accept funds and instruct parents to prepare

17   for the arrival of their children.  Defendants' affirmative misconduct is more than sufficiently pled.

18   *See Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1166 (9th Cir. 2005) (holding that if subsequent fact-

19

20

---

estoppel, *whose hallmark is its flexible application*, exists to avoid injustice in particular cases")
(internal quotation marks and alterations omitted) (emphasis added).

[13] Defendants make a passing reference to their representation that medical and travel fees
would be refunded. Motion at 19.  This representation is undercut by the fact that the very
document Defendants cite warns that, "[i]f you have already completed a medical exam, then there
is no refund of the medical exam expense," Administrative Record (ECF 33) ("AR") Ex. 6 at AR
000037.  Further, Defendants entirely disregard that Plaintiffs took substantial safety risks in
reliance on the Government's representation that it was continuing to process applications. *See*
Cplt. ¶¶84, 89, 92.

[14] Defendants argue that "[a] number of the named plaintiffs candidly acknowledge" that they
were informed the program was on hold. *See* Motion at 17 n. 4. Defendants' cite to one Plaintiff
(D.D.) and her daughter (A.D.) misses the point.  Having been informed that the program was on
hold in no way contradicts that Plaintiffs and the public were ignorant of the true facts; the
Defendants continued to represent that the program had not been ended and that they were
processing applications; and continued to solicit payment from applicants, when the program had in
reality been shut down. *See* Cplt. ¶¶55-60.

1    finding proved, as non-citizen alleged, that "INS deprived him of his right to have his immigration

2    status determined in the pending deportation proceeding," such affirmative misconduct was

3    sufficient to support equitable estoppel).

4         Finally, Defendants' argument that the "application of estoppel would interfere with the

5    government's policy decision," Motion at 18, is similarly misguided.  The Ninth Circuit in *Watkins*

6    affirmed the district court's order that estopped the Army from refusing to reenlist a plaintiff

7    "despite [the Army's] longstanding *policy* that homosexuality was a nonwaivable disqualification

8    for reenlistment."  *Watkins*, 875 F.2d at 701 (emphasis added).[15]

9    **II.    ALL PLAINTIFFS HAVE STANDING.**

10        Defendants concede the standing of the U.S.-based Plaintiffs and the associational standing

11   of CASA.  Because this Court need only find one Plaintiff has standing to assert jurisdiction,

12   Defendants' motion should be denied.  *See Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).  In any

13   event, Defendants' contentions as to foreign-based Plaintiffs and CASA's direct standing are

14   incorrect.

15        **A.    The Foreign CAM Parole Applicants Have Standing.**

16        Defendants incorrectly suggest that non-U.S. citizens located abroad cannot have standing to

17   challenge the termination of the CAM Parole program.  The test for Article III standing does not

18   depend on the nationality of the plaintiff.  *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 774

19   (9th Cir. 1996); *Silva v. Bell*, 605 F. 2d 978, 984 (7th Cir. 1979); *Cardenas v. Smith*, 733 F.2d 909,

20   913 (D.C. Cir. 1984) ("For purposes of Article III Standing, Cardenas' status as a nonresident alien

21   does not obviate the existence of her injury; it is the injury and not the party that determines Article

22   III standing").  Defendants appear to concede most elements of standing.  They do not contend that

23   the foreign plaintiffs abroad have not suffered a concrete and particularized injury; they do not

24   contend that the injury is not fairly traceable to their actions; and they do not contend that a

25

26   _____

27        [15] Defendants' citation to *Emery Mining Corp. v. Secretary of Labor*, 744 F.2d 1411, 1416 (10th Cir. 1984) is inapposite.  The appellant in that case had relied on an interpretation of its training obligations that "plainly [wa]s at odds with the language and objective of the statute," which

28   "hardly could be more clear."  *Id.* at 1414-15, 1417.  Here, Plaintiffs reasonably relied on Defendants' ongoing representations.

1    favorable decision will fail to provide redress.  *See Massachusetts v. EPA*, 549 U.S. 497, 517

2    (2007).  Nor do Defendants contend that the foreign plaintiffs abroad lack statutory standing under

3    the APA zone of interests test.  *See Constructores Civiles de Centroamerica, S.A. (CONCICA) v.*

4    *Hannah*, 459 F.2d 1183, 1190 (D.C. Cir 1972) (noting that APA affords review to "any person," not

5    only "any citizen," and permitting a Honduran corporation to maintain action); *People of Saipan ex*

6    *rel. Guerrero v. U.S. Dep't of Interior*, 356 F. Supp. 645, 652 (D. Haw. 1973) (holding that status of

7    plaintiffs as nonresident foreign nationals does not detract from their standing under APA), *aff'd as*

8    *modified*, 502 F.2d 90 (9th Cir. 1974).  Rather, Defendants contend that because foreign Plaintiffs

9    cannot challenge individual discretionary parole determinations, they have suffered no "injury in

10   fact" as a result of the wholesale termination of the CAM Parole program.

11         This argument miscomprehends the gravamen of the Complaint.  Plaintiffs are not asking

12   this Court to re-adjudicate thousands of individual parole decisions.  They are contesting

13   administrative action that ended an entire program and their resulting loss of an opportunity to be

14   considered for parole under that program, which constitutes injury in fact.  *See Doe v. Nielsen*, Case

15   No. 5:18-cv-02349-BLF, Order Granting Plaintiffs' Motion for Partial Summary Judgment (N.D.

16   Cal. July 10, 2018) (finding standing for Iranians to challenge mass denial of refugee status).  The

17   cases cited by Defendants are not to the contrary.  *Benjamin v. U.S. Dep't of State*, No 17-cv-03587-

18   LB, 2018 WL 1142124, at *4 (N.D. Cal. Mar. 2, 2018), involved an individual's challenge to the

19   denial of a visa.  Similarly, *Chinese American Civic Council v. Attorney General*, 396 F. Supp.

20   1250, 1251 (D.D.C. 1975), concerned five individuals' visa denials.

21         **B.     CASA Has Direct Standing to Pursue Relief on Its Own Behalf.**

22         With respect to CASA, Defendants only challenge its direct (not associational) standing and

23   only does so on prudential grounds, *i.e.*, that CASA is not within the "zone of interests" protected

24   by the Immigration and Naturalization Act.  Because standing in any capacity is sufficient, there is

25   no need to reach this argument.  But, in any case, as CASA alleges in the Complaint, and further

26   elaborates in its declaration in support of the motion for a preliminary injunction, it is one of the

27   largest member-based immigrant advocacy and service organizations in the nation with a

28   membership largely comprised of immigrants from Central America.  Cplt. ¶14.  CASA viewed the

CAM program as a life-saving opportunity for its members to reunite with their loved ones. *Id.*. It assisted 235 of its members in filing CAM applications, thereby incurring substantial organizational expense. *Id.* The zone of interests test under the APA is "not especially demanding." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). It only limits suits when "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably assumed that Congress intended to permit the suit." *Batalla Vidal v. Duke*, 295 F. Supp. 3d 127, 163 (E.D.N.Y. 2017) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012)). Organizations like CASA are directly involved in assisting immigrants and play a central role in helping programs like CAM achieve their purpose; without such organizations, it is likely that CAM would have gone largely unnoticed and would have benefitted far fewer individuals. Its interests are not "marginally related to or inconsistent with the purposes" of the program or underlying statute. *See also Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*, 325 F.R.D. 671, 684–85 (W.D. Wash. 2016) (recognizing direct organizational standing based on a "diversion of [their] resources and a frustration of [their] mission[s]").

## III.   THE PRESIDENT IS PROPERLY NAMED AS A DEFENDANT IN HIS OFFICIAL CAPACITY.

Defendants argue that the President should be dismissed because he is entitled to "absolute immunity" from suit. The Ninth Circuit authority relied on by Defendants, *Fry v. Melaragno*, 939 F.2d 832, 835–36 (9th Cir. 1991), was an action for damages. The court cited *Mitchell v. Forsyth*, 472 U.S. 511 (1985), which likewise recognized an absolute immunity afforded to the President "in *civil damages* actions." *Id.* at 520 (emphasis added). This action does not seek damages. In cases involving injunctive or declaratory relief, the President may be a proper defendant in limited circumstances. *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) ("[w]e have left open the question whether the President might be subject to a judicial injunction.") (plurality opinion). For example, in *Centro Presente v. DHS*, No. 18-10340, 2018 WL 3543535, at *1 (D. Mass. July 23, 2018), a group of plaintiffs brought an action against President Trump and other governmental defendants challenging the circumstances surrounding the termination of the

1    designations of Haiti, El Salvador, and Honduras for temporary protected status.  The plaintiffs'

2    complaint included, *inter alia*, constitutional claims, including violations of the Equal Protection

3    and the Due Process clauses, and violations of the APA.  *Id.* at *7.  The defendants sought dismissal

4    of President Trump as a defendant, but the court, relying on *Franklin*, found "[a] record has not yet

5    been developed regarding, for some examples, what relief would be appropriate if Plaintiffs

6    prevailed on their claim or whether an injunction against lower officials or declaratory relief would

7    be sufficient," and denied the motion to dismiss stage as premature.  *Id* at *17; *see also Knight First*

8    *Amendment Inst. v. Trump*, 302 F. Supp. 3d 541, 577-78 (S.D.N.Y. 2018) ("Defendants suggest that

9    we categorically lack authority to enjoin the President, a proposition we do not accept.").  As in

10    *Centro Presente*, the complaint alleges an extraordinary series of hostile and racist comments from

11    the President himself, and Defendants themselves claim that the termination of the CAM Parole

12    program was mandated by an executive order issued by the President.  Under these circumstances

13    dismissal of the President as a defendant is inappropriate or at least premature.

**CONCLUSION**

15         For the foregoing reasons, the motion to dismiss should be denied.

16    DATED: September 17, 2018.

17                                        Respectfully submitted,

     /s/ *Daniel B. Asimow*                          /s/ *Linda Evarts*

19    DANIEL B. ASIMOW                          LINDA EVARTS (appearance *pro hac vice*)
     MATTHEW H. FINE                           KATHRYN C. MEYER (appearance *pro hac vice*)
20    ARNOLD & PORTER KAYE SCHOLER LLP          MARIKO HIROSE (appearance *pro hac vice*)
     Three Embarcadero Center, 10th Floor      INTERNATIONAL REFUGEE ASSISTANCE
     San Francisco, California  94111          PROJECT
                                               40 Rector Street, 9th Floor
21    JOHN A. FREEDMAN (appearance *pro hac vice*)   New York, NY  10006
22    DAVID J. WEINER
     GAELA K. GEHRING FLORES*
23    DANA O. CAMPOS*
     MATEO MORRIS*
24    ARNOLD & PORTER KAYE SCHOLER LLP
     601 Massachusetts Ave., NW
25    Washington, DC  20001-3743

26    PHILLIP A. GERACI*
     SUSAN S. HU*
     ARNOLD & PORTER KAYE SCHOLER LLP
27    250 West 55th Street
     New York, NY  10019-9710
28    *Pro Hac Vice* motion forthcoming

                              *Attorneys for Plaintiffs*

1

## ATTESTATION OF CONCURRENCE IN THE FILING

2          Pursuant to Civil Local Rule 5-1(i)(3), I declare that concurrence has been obtained from the

3   signatory to file this document with the Court.

4                                                              /s/ *Daniel B. Asimow*
                                                             DANIEL B. ASIMOW
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA IN OPPOSITON TO MOTION TO DISMISS                                              No. 3:18-cv-035